[No. 33534. Department Two. March 15, 1956.]

STODDARD-WENDLE MOTOR COMPANY, *Plaintiff and Relator*,
v. AUTOMOTIVE MACHINISTS LODGE 942, INTERNATIONAL
ASSOCIATION OF MACHINISTS, *et al.*, *Defendants*,
THE SUPERIOR COURT FOR SPOKANE COUNTY,
*Raymond F. Kelly, Judge, Respondent.*[1]

*John D. MacGillivray, Richard W. Axtell, Willard W. Jones,* and *McMicken, Rupp & Schweppe,* for plaintiff and relator.

*Bassett, Geisness & Vance* and *R. Max Etter,* for defendants.

WEAVER, J.—Does jurisdiction of the subject matter presented by the facts before us rest in the courts of this state; or, does the national labor relations board have exclusive jurisdiction?

After hearing, the trial court announced that it would dissolve a temporary restraining order upon the ground

[1] Reported in 295 P. (2d) 305.

that the court did not have jurisdiction to continue it. The matter is before us, upon petition for a writ of mandamus, to compel the trial court to assume jurisdiction and continue the temporary restraining order.

Stoddard-Wendle Motor Company, relator, a Washington corporation doing business in Spokane, sells automobiles and operates a garage. Its annual out-of-state sales exceed one hundred thousand dollars.

Defendants are four labor unions, their officers, and trustees.

None of relator's eighty-two employees is a member of any of the defendant unions. Between January 1, 1955, and September 23, 1955, relator was not involved in a dispute with any of its employees over wages, hours, or working conditions. There were no negotiations of any kind pending between relator and defendants. However, in June, 1955, the relator was placed upon the "We do not patronize list" of the Spokane Automotive Trade Council and the Spokane Central Labor Council.

Relator displayed the new 1956 Ford automobile on September 23, 1955, the day designated by the manufacturer. That morning, about eight o'clock, defendants picketed relator's place of business, carrying signs which read:

"Employees of this Firm are Non-Union"—"Automotive Mechanics Lodge 942" and "Non-Union Employees Work Here—Automotive Trade Council A.F.L.," or words of like import. The pickets distributed leaflets to those about to enter relator's place of business which read as follows:

"Please!
Do Not Cross This Picket Line
Stoddard-Wendle Motors is on the
We Do Not Patronize List
of both the Spokane Automotive Trade Council (AFL)
and the Spokane Central Labor Council (AFL)
"There is a 100% Union Ford Dealer Downtown
where you may see the New Ford
Ask one of the Pickets for Details
We sincerely Appreciate your Cooperation
Spokane Automotive Trades Council (AFL)"

Relator commenced this action immediately, praying for injunctive relief and requesting that defendants "answer in damages suffered by plaintiff as a result of picketing by the defendants."

September 23, the superior court entered, *ex parte*, a temporary restraining order and order to show cause on September 30, 1955, why the restraining order should not be made permanent pending determination of the merits of the action.

The order restraining the picketing was served immediately. The picket line dispersed. However, within a matter of hours, the wives of the individual defendants, together with other women, continued the picket line, carried the same placards, and distributed identical leaflets. They picketed throughout the next day.

September 26, 1955, the court issued an order to show cause why defendants should not be adjudged in contempt of court for willful disobedience of the temporary restraining order. This, also, was set for hearing on September 30, 1955.

Defendants filed a motion to dissolve the temporary restraining order on the ground that exclusive jurisdiction of the subject matter is vested in the national labor relations board.

No witnesses were sworn at the hearing on October 13, 1955. One exhibit was introduced without objection. It was a stenographic report of testimony before an examiner of the national labor relations board in a matter not germane to the case before us, except that, therein, counsel stipulated that relator's annual out-of-state sales exceed one hundred thousand dollars. Counsel also stated that, under relator's theory of the case, one of the purposes of the picketing was to induce the relator to coerce its employees to join one of the defendant unions.

When this cause came on for hearing, only two issues were before the court: (1) the continuation or dissolution of the order restraining the picketing; and (2) the issue of contempt for the alleged violation of the restraining order.

In its oral opinion, the trial court did not discuss the second issue. Hence, we limit this opinion to a consideration of the precise question raised by the first issue, namely, does the national labor relations board have exclusive right to consider the prevention of picketing of relator's business, keeping in mind that relator's annual out-of-state sales exceed one hundred thousand dollars? We are not considering a situation where the aggrieved party is engaged solely in *intra*state business.

The national labor relations act of 1935 (29 U. S. C. 1946 ed. § 151, *et seq.*), as amended by the labor management relations act, 1947 (29 U. S. C. 1952 ed. § 141 *et seq.*), treats with an extensive field of relations between labor and management. When the Federal government, by virtue of power granted to it by the Federal constitution, enacts legislation, Federal jurisdiction over the subject matter may or may not be exclusive. The question is one of Congressional intent, and it is the function of courts to determine that intent, unless, of course, the legislation expressly provides for exclusive jurisdiction.

Difficulty arises when it must be determined whether specific facts are covered by the subject matter of the act. Has Congress so far pre-empted the field that, even in its silence, state action is excluded; or, is state action preserved? The difficulty is compounded when this question must be resolved by a state court. The problem is further complicated by the absence of specific standards in the act itself. It

". . . leaves much to the states, though Congress has refrained from telling us how much." *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (A.F.L.)*, 346 U. S. 485, 488, 98 L. Ed. 228, 74 S. Ct. 161 (1953).

"This prenumbral area can be rendered progressively clear only by the course of litigation." *Weber v. Anheuser-Busch, Inc.*, 348 U. S. 468, 480, 99 L. Ed. 546, 75 S. Ct. 480 (1955).

The uncertainty which permeates the problem is illustrated by the *per curiam* opinion in *Building Trades Council*

*v. Kinard Constr. Co.,* 346 U. S. 933, 98 L. Ed. 423, 74 St. Ct. 373 (1954), wherein the court said:

"Since there has been no clear showing that respondent has applied to the National Labor Relations Board for appropriate relief, or that it would be futile to do so, the Court does not pass upon the question suggested by the opinion below of whether the state court could grant its own relief should the Board decline to exercise its jurisdiction."

Since the rule must be developed eventually by a case-by-case process of definition, the particular facts of each case become of prime importance, for the theory of one case may be completely inapplicable to the facts of another.

In the following cases, the United States supreme court held that the authority exercised therein by the states had not been absorbed exclusively by the Federal enactments. *Allen-Bradley Local No. 1111, United Electrical, Radio & Machine Workers of America v. Wisconsin Employment Relations Board,* 315 U. S. 740, 86 L. Ed. 1154, 62 S. Ct. 820 (1942) (Mass picketing); *International Union U.A.W.A., A. F. of L., Local 232 v. Wisconsin Employment Relations Board,* 336 U. S. 245, 93 L. Ed. 651, 60 S. Ct. 516 (1949) (Recurrent, unannounced work stoppage); *Algoma Plywood & Veneer Co. v. Wisconsin Employment Relations Board,* 336 U. S. 301, 93 L. Ed. 691, 69 S. Ct. 584 (1949) (Enforcement of a maintenance-of-membership clause); *United Constr. Workers v. Laburnum Constr. Corp.,* 347 U. S. 656, 98 L. Ed. 1025, 74 S. Ct. 833 (1954) (Action for damages based on violent conduct).

29 U. S. C. 1952 ed. § 158 (b) provides:

"It shall be an unfair labor practice for a labor organization or its agents— . . .

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section . . ."

29 U. S. C. 1952 ed. § 158 (a) (3) provides:

"(a) It shall be an unfair labor practice for an employer—

. . .

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to en-

courage or discourage membership in any labor organization: . . ."

*Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (AFL), supra,* is the leading and most discussed case in this field. Therein, a labor union peacefully picketed the premises of an *inter*state trucking company. Such picketing had for its purpose the unionization of the company's employees. Four of the company's twenty-four employees were members of respondent union. However, there was no labor dispute between the company and its employees, and the company did not object to its employees becoming union members.

The United States supreme court held that the Pennsylvania court of common pleas did not have jurisdiction to enjoin the picketing, because the factual situation placed the case within the exclusive jurisdiction of the national labor relations board. The court said:

"Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." (p. 490)

In spite of the analyses and conjectures which have been made, and the criticisms which have been directed to the language of the *Garner* opinion, we conclude that the United States supreme court has announced the following rule:

▪ A state court does not have jurisdiction to enjoin peaceful picketing to induce unionization of the employees of an *inter*state employer, since such activity presents the question of an unfair labor practice within the meaning of the terms of the labor management relations act, which,

initially at least, gives the national labor relations board exclusive jurisdiction.

In *Mahoney v. Sailors' Union of the Pacific*, 45 Wn. (2d) 453, 460, 275 P. (2d) 440 (1954), cert. den. 349 U. S. 915, 99 L. Ed. 1249, 75 S. Ct. 604 (1955), we recognized this rule when we said:

"If the acts complained of by an employer constitute an unfair labor practice affecting commerce, as defined in the act, then *injunctive* relief in state courts is precluded, unless such traditionally local matters as public safety and order and the use of streets and highways are involved."

Although it is urged that some of the language of the *Garner* opinion, *supra*, has been modified in the more recent decision of *Weber v. Anheuser-Busch, Inc.*, *supra*, we cannot find that the rule of the *Garner* case, as applied to the facts, has been changed. The court said in the *Weber* case:

"Where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues *in the first instance.*" (p. 481) (Italics ours.)

We are not unaware of the fact that four employees in the *Garner* case were members of the union, while none of relator's employees are union members. This factual difference is immaterial, however, because

"The Board [national labor relations board] is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce." 29 U. S. C. 1952 ed. § 160.

In *Local Union No. 25 of the International Brotherhood of Teamsters, Chaffeurs, Warehousemen & Helpers of America v. New York, New Haven & Hartford R. Co.*, 350 U. S. 155, 76 S. Ct. 227 (January 9, 1956) (A case decided since the instant case was argued), the supreme court, in revers-

ing the supreme judicial court of Massachusetts, became more explicit on this phase of the problem.

The teamsters' union was endeavoring to have certain motor carriers (with whom the union had a collective-bargaining agreement) stop rail shipment of loaded trailers ordinarily hauled over the highways. The teamsters picketed the railroad yard and prevented the loading of the trailers. There was no labor dispute with the railroad; none of its employees belonged to the teamsters' union. The state court enjoined the picketing. This judgment was reversed. The court said:

"The N.L.R.B. is empowered to issue complaints whenever 'it is charged' that *any person subject to the Act* is engaged in any proscribed unfair labor practice. § 10 (b). Under the Board's Rules and Regulations such a charge may be filed by 'any person.' We think it is clear that Congress, in excluding 'any person subject to the Railway Labor Act' from the statutory definition of 'employer,' carved out of the Labor Management Relations Act the railroads' employer-employee relationships which were, and are, governed by the Railway Labor Act. But we do not think that by so doing Congress intended to divest the N.L.R.B. of jurisdiction over controversies otherwise within its competence solely because a railroad is the complaining party. Furthermore, since railroads are not excluded from the Act's definition of 'person,' they are entitled to Board protection from the kind of unfair labor practice proscribed by § 8 (b) (4) (A). This interpretation permits the harmonious effectuation of three distinct congressional objectives: (1) to provide orderly and peaceful procedures for protecting the rights of employers, employees and the public in labor disputes so as to promote the full, free flow of commerce, as expressed in § 1 (b) of the Labor Management Relations Act; (2) to maintain the traditional separate treatment of employer-employee relationships of railroads subject to the Railway Labor Act; and (3) to minimize 'diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.' *Garner v. Teamsters Union,* 346 U. S. 485, 490." (Italics ours.)

Several other jurisdictions, which have considered the question, have reached the same conclusion. *Grimes & Hauer, Inc. v. Pollock,* 163 Ohio St. 372, 127 N. E. (2d) 203

(1955); cert. den. 350 U. S. 900, 76 S. Ct. 178 (1955); *Texas Constr. Co. v. Hoisting & Portable Engineers' Local Union No. 101*, 178 Kan. 422, 286 P. (2d) 160 (1955). The supreme court of Ohio was careful to point out that should the national labor relations board

" . . . decline to entertain the matter, another question might arise with which we have no present concern." (p. 380)

Having concluded that the national labor relations board has exclusive jurisdiction to consider the facts before us, we do not reach the question of the lawfulness or unlawfulness of the picketing. Hence, those cases of which *Vogt, Inc. v. International Brotherhood of Teamsters Local 695, A.F.L.* (Wisc.), 74 N. W. (2d) 749 (filed February 7, 1956) is illustrative are not apposite.

Relator's petition for a writ of mandamus is denied.

HAMLEY, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.

———————

September 25, 1956.  Petition for rehearing denied.