[No. 42192.  En Banc.  May 18, 1972.]

Roza Irrigation District, *Respondent*, v. The State of Washington *et al., Appellants.*

*Slade Gorton, Attorney General,* and *Virginia O. Binns, Assistant,* for appellants.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle,* by *Mary Ellen Krug* and *Donald L. Logerwell,* for respondent.

ROSELLINI, J.—In 1967, the legislature, sitting in extraordinary session, enacted chapter 108 (RCW 41.56), declaring in RCW 41.56.010:

> The intent and purpose of this chapter is to promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.

In RCW 41.56.020 it provided:

> This chapter shall apply to any county or municipal corporation, or any political subdivision of the state of Washington except as otherwise provided by RCW 47.64.030, 47.64.040, 54.04.170, 54.04.180, 28.72.010 through 28.72.090, and chapter 53.18 RCW.

It defined, in RCW 41.56.030, the term "public employee" to mean any employee of a public employer, with certain enumerated exceptions not pertinent in this action.

In RCW 41.56.060, it authorized the Department of Labor and Industries, upon proper application, to certify the bargaining representative. Pursuant to that authorization, the department, on October 8, 1968, certified the Laborers' Union Local No. 614 as the exclusive bargaining agent of certain employees of the Roza Irrigation District. The irrigation district appealed that decision to the superior court, where it was stipulated that the appeal should be treated as a declaratory judgment action. The department moved for judgment on the pleadings. In ruling on this motion, the

superior court held that the act in question did not apply to irrigation districts and consequently did not authorize the department to certify the bargaining agent of the employees of the district.

A declaratory judgment was entered accordingly, and the department has appealed.

The position of the department upon this appeal is that an irrigation district is either a municipal corporation or a political subdivision, within the meaning of RCW 41.56.020. Conversely, the irrigation district maintains that it is neither.

■ Since the question is one of statutory interpretation, we approach it with the applicable rules of statutory construction in mind. Of course the basic rule is that, where the language of a statute is clear and unambiguous, there is no room for judicial interpretation. *King County v. Seattle*, 70 Wn.2d 988, 425 P.2d 887 (1967). Here there is a dispute as to the meaning of the term municipal corporation, as well as the term political subdivision. We find it unnecessary to explore the scope of the latter, since we are convinced that the term municipal corporation, as used in this statute, is broad enough to include irrigation districts and that it was the legislative intent to include them.

■ That the designation municipal corporation is susceptible of more than one meaning is well-settled. In 1 E. McQuillan, Municipal Corporations § 2.07 (3d rev. ed. 1971), we find the following:

> Municipal corporations are either (1) municipal corporations proper, or (2) quasi-municipal corporations. They may also be classified as (a) municipal corporations in the strict sense of the term, and (b) municipal corporations in the broad sense of the term.

(Footnote omitted.)

The proposition that the legislature may use the term in some contexts with the intent that it should be broader in its scope than when used in other contexts has been clearly recognized by this court. Citing the same treatise, we said

636

in *Columbia Irrigation Dist. v. Benton County,* 149 Wash. 234, 235, 270 P. 813 (1928):

> A municipal corporation, in its strict and proper sense, is a body politic established by law partly as an agency of the state to assist in the civil government of the country but chiefly to regulate and administer the local and internal affairs of the city, town or district which is incorporated. Sometimes the term municipal corporation is used in a broader sense and includes public quasi corporations, the principal purpose of whose creation is an instrumentality of the state, but not for the regulation of local and special affairs of a compact community. Dillon on Municipal Corporations (5th ed.), vol. 1, §§ 31 and 32.

In a rather comprehensive treatise, 3A C. Antieau, Local Government Law (Independent Local Government Entities) (1970), the author analyzes the nature of such entities as the one with which we are concerned here and points out that the following, while in strict logic not true municipal corporations, have nevertheless been called such in certain contexts: School districts (§ 30C.01); fire protection districts (§ 30D.00); airport authorities (§ 30E.00); housing authorities (§ 30F.00); sewerage and sanitary districts (§ 30G.00); port districts (pointing out that RCW 53.04.060 provides that the district shall become a municipal corporation, and that the decisions of this state accordingly treat port districts as municipal corporations) (§ 30I.00); utility districts (also defined by statute in this state as municipal corporations) (§ 30J.00); drainage and irrigation districts (§ 30K.00); library districts (the author stating, "This is solely a matter of ascertaining the intent of the local legislature.") (§ 30L.00); park and recreation districts (§ 30O.00); building authorities (§ 30P.11); road and highway district (§ 30P.15).

According to this writer, even a hospital authority has been called a "governmental subdivision of the state." (§ 30H.00). Also, he ventures the opinion that a parking authority may conceivably be a municipal corporation under certain statutes and for certain purposes.

While this court has said that an irrigation district is "a

corporation which exercises no governmental functions" (*In re Horse Heaven Irrigation Dist.*, 11 Wn.2d 218, 227, 118 P.2d 972 (1941)), it also has recognized in *Columbia Irrigation Dist. v. Benton County, supra,* and cases cited therein, that the term may be used in a constitution or statute in either a broad or a limited sense, and in each case the meaning of the term must be ascertained by an examination of the statute to determine the legislative intent.

In some statutes the legislature has defined or described as municipal corporations public bodies which are not municipal corporations in the strict sense. Examples are RCW 54.04.020,

> Municipal corporations, to be known as public utility districts, are hereby authorized . . .

RCW 53.04.060,

> and the port district shall then be and become a municipal corporation of the state of Washington . . .

RCW 53.48.010,

> (1) The term "District" as used herein, shall include all municipal corporations having a governing body, other than cities, towns, counties, and townships, such as port, school, independent highway, water, fire protection, and all other districts of similar organization, but shall not include local improvement districts, diking, drainage and irrigation districts, nor public utility districts.

and most significantly here, RCW 54.04.030,

> This act shall not be deemed or construed to repeal or affect any existing act, or any part thereof, relating to the construction, operation and maintenance of public utilities by *irrigation or water districts* or other municipal corporations . . .

(Italics ours.)

It is plain, therefore, that the legislature does use the term municipal corporation in its broad sense and has in fact used it in reference to irrigation districts. The question then becomes, did it intend to use it in a broad sense in RCW 41.56.020?

A statute is to be construed with reference to its

manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other defeat the manifest object, it should receive the former construction. 2 J. Sutherland, Statutory Construction § 4704 (3d ed. 1943). In ascertaining the legislative purpose consideration must be given to all of the provisions of an act, and a construction must be adopted which is reasonable and in furtherance of the manifest purpose of the legislation. *State v. Lee*, 62 Wn.2d 228, 382 P.2d 491 (1963).

Here the declared purpose of the act was to

> promote the continued improvement of the relationship between public employers and their employees by providing a uniform basis for implementing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in matters concerning their employment relations with public employers.

RCW 41.56.010.

The employees covered are "all public employees" except those expressly exempted. It appears evident, however, that the legislature did not intend to include employees of the state itself, but rather employees at the local level, since state employees are not referred to in RCW 41.56.020 (except insofar as employees of the toll bridge authority may be regarded as state employees, that authority covered by RCW 47.64.030 and .040, being expressly exempted).

The legislature must have been aware that this court had held that public employees, while they have the right to organize, do not have the right to strike. *Port of Seattle v. International Longshoremen's & Warehousemen's Union*, 52 Wn.2d 317, 324 P.2d 1099 (1958).[1] It preserved that ruling in the provisions of the act. The right to organize is protected in RCW 41.56.040 and the legislature expressly disavowed any grant of the right to strike in RCW 41.56.120. By way of compensation for the refusal to grant this right,

---

[1] The employer in that case was a quasi municipal corporation described as a municipal corporation by both the legislature and the court.

however, are the provisions defining unfair labor practices (RCW 41.56.140 and .150) and providing remedies therefor (RCW 41.56.160 through .190). Other provisions affecting the improvement of employer-employee relations are contained in the remaining sections.

This legislation, being remedial in nature, is entitled to a liberal construction to effect its purpose. *Peet v. Mills,* 76 Wash. 437, 136 P. 685 (1913).

The respondent does not suggest that an irrigation district is a private organization or that its employees are not public employees. Rather, its position is that the legislature intended to cover only employees of local governing bodies, such as cities, towns and counties. We find no such restrictive intent expressed in the statute. The service which irrigation district employees render is a vital one in the areas which they serve. It is in the public interest to avoid interruption of irrigation services, just as it is to avoid interruption of services rendered by a city's fire or police department. We are given no plausible reason why the legislature should have chosen to deny such employees the protection of the act or to regard them as private employees, having the right to strike.

Ingenuously, counsel for the respondent suggests that the legislature had in mind the possibility that under National Labor Relations Board rulings, the employees of irrigation districts might be either covered by the Labor Management Relations Act, 1947 (29 U.S.C. 141 (1964)) or classified as agricultural employees. If the legislature had in fact made an express exception in the case of irrigation districts, this theory might be considered as a possible explanation; but we find no expression of a legislative intent to exempt such districts. The respondent does not go so far as to say that the National Labor Relations Board has assumed jurisdiction over its employees, or that any proceeding has been instituted before it in which it might assert jurisdiction. Nor is it claimed that the respondent's employees are actually engaged in interstate commerce. We are confident that we have jurisdiction of the case (*see Stoddard-Wendle*

*Motor Co. v. Automotive Machinists Lodge 942,* 48 Wn.2d 519, 295 P.2d 305 (1956)). We find expressed in the statute no indication that the legislature intended to exclude employees who might conceivably be subject to federal regulation, or to exclude agricultural employees of public employers.

Our examination of the legislative purpose and of other acts in which the legislature has used the term municipal corporation to describe bodies such as the respondent irrigation district, and in fact to describe irrigation districts themselves (RCW 54.04.030 and *see* RCW 53.48.010), convinces us that the legislature was accustomed to using the term in its broad sense and that it intended to use it in that sense here. But if any doubt remains, we think the context in which the term appears makes it clear that the legislature was not thinking of municipal corporations in any restricted sense. Having declared that the act shall apply to *"any* municipal corporation," it proceeded to list four exceptions. These exceptions are the Washington toll bridge authority (RCW 47.64.030 and .040), public utility districts (RCW 54.04.180), school districts (RCW 28A.72.010-.090) and port districts (RCW 53.18).

The reason for each of these exceptions is easily discerned, since the cited statutes contain other provisions for employer-employee relations procedures and remedies. Not only does this fact confirm the manifest purpose to extend the benefits of the act to public employees at the local level generally, but the very nature of the exceptions makes it indisputable that the legislature was aware of having used the term municipal corporation in its broad sense. This is true because not one of them is a municipal corporation in the strict sense, and at least two are quasi municipal corporations of a nature very similar to that of the respondent. We refer of course to public utility districts and port districts, neither of which exercises governing functions any more than does the respondent and both of which perform services which are essentially proprietary.

■■ If the legislature had used the term municipal corporations in its strict sense, it would have had no reason to expressly exclude certain quasi municipal corporations. An exception, like a proviso, operates to restrict the generality of legislative language. 2 J. Sutherland, Statutory Construction § 4936 (3d ed. 1943). Logically, then, a term which is restricted by an exception must have been used with the understanding that it was broad enough to include the exception, else engrafting the exception would have been an unnecessary and meaningless act. It is of course presumed that the legislature does not deliberately engage in such acts, and it would be anomalous to suppose that the exceptions attached to RCW 41.56.020 were placed there inadvertently.

■ Also supporting this conclusion is the principle that a word which is capable of more than one meaning takes its meaning in a given case from the context in which it is used. *State ex rel. Kadow v. Board of Adjustment*, 77 Wn.2d 587, 464 P.2d 418 (1970).

■ It is true of course that, if the legislature had expressly stated that the act should apply to all municipal corporations, including quasi municipal corporations, we would not be confronted with the problem of interpretation presented in this case. Nevertheless, where the intent of the legislature is clear, the court is governed by it, despite the fact that, as draftsman, it might have used or preferred a somewhat different choice of language than that employed by the legislature. *Guinness v. State*, 40 Wn.2d 677, 246 P.2d 433 (1952).

Examining the statute as a whole, and having in mind its expressed purpose, we are convinced that the legislature intended RCW 41.56 to cover irrigation districts such as the respondent.

The judgment is reversed.

HAMILTON, C.J., FINLEY, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.

Petition for rehearing denied August 30, 1972.