[No. 17196. Department One. October 7, 1922.]

THE CITY OF TACOMA, *Appellant,* v. THE STATE OF WASHINGTON, *Respondent.*[1]

EMINENT DOMAIN (119)—PETITION—ABANDONMENT. A petitioner in eminent domain proceedings may abandon the same as to part of the property at first sought.

SAME (29)—PROPERTY SUBJECT—STATE LANDS—DEVOTION TO PUBLIC USE. Under Rem. Comp. Stat., §9488, and §7354, the indefinite and unfulfilled purpose of the state to devote state lands to a public purpose does not prevent a city's condemnation of the right to divert water therefrom.

SAME (29). The state can not object to a city's condemnation of the right to divert water from a stream upon which the state maintains a fish hatchery, where it appears by the preponderance of the evidence that there will be ample water left to operate the hatchery and that the diversion will not damage, but will be a benefit to the hatchery.

SAME (29). The condemnation by a city of school lands granted to and held by the state is authorized by statute [Rem. Comp. Stat., § 9215 *et seq.*]

[1]Reported in 209 Pac. 700.

SAME (29). The state can not contest the condemnation of the waters of a stream by reason of the fact that it will seriously damage the natural propagation of food fish.

SAME (56)—COMPENSATION—PROPERTY SUBJECT—WATER RIGHTS— NAVIGABILITY OF STREAM. The navigability of a stream at certain stages of the water for the floating of logs is not a public navigability that may not be impeded, within the meaning of Rem. Comp. Stat., § 9488, authorizing the condemnation of the water for public purposes.

SAME (104)—PROCEEDINGS—CONDITION PRECEDENT—PERMIT TO USE WATER. There is nothing in Rem. Comp. Stat., § 7391, or other parts of the water code requiring a city to secure a permit from the state supervisor of hydraulics before seeking to appropriate the waters of a stream by eminent domain proceedings.

Appeal from a judgment of the superior court for Mason county, Wright, J., entered December 17, 1921, dismissing proceedings to condemn property and rights belonging to the state. Reversed.

*J. Chas. Dennis, Percy P. Brush, Peters & Powell,* and *Robert H. Evans,* for appellant.

*The Attorney General* and *John A. Homer,* for respondent.

TOLMAN, J.—The city of Tacoma seeks by this proceeding to condemn and acquire certain real property and rights belonging to the state of Washington. From a judgment dismissing its petition, the city has appealed.

The city of Tacoma has undertaken to install a hydro-electric plant for the purpose of generating electricity to be used for light and power purposes, by utilizing the waters of the north fork of the Skokomish river, in Mason county. It has already acquired by purchase, and by condemnation in other proceedings, substantially all of the property and rights of private owners which it requires for its present purpose, and now seeks to acquire certain property and rights

owned by the state of Washington which it regards as essential.

The Skokomish river, which flows into Hoods Canal, is formed by the junction of what are known as the north fork and the south fork. This junction of the two forks occurs about seven miles above the mouth of the river. The city proposes to erect a dam on the north fork in section 5, township 22 north, range 4 west, at a point about 11 miles above the junction of the two forks, and by means of this dam and the necessary diverting works, to take all of the water of the north fork and carry and discharge it by means of a canal and pipe line through its power house and into Hoods Canal without returning it to the stream. The result will be that the only water flowing from the north fork into the main stream will be such as goes through or over the dam by wastage, and such as is discharged into the north fork by tributary streams between the dam and the confluence of the two forks.

By this proceeding it is sought to acquire the right to divert the water of the north fork from one acre of land belonging to the state, located on the north fork below the proposed dam, which is referred to as the "eyeing station." The state also owns a certain school section, No. 16, through which the north fork flows, also below the dam, and the city seeks to condemn a strip 250 feet in width lying 125 feet on either side of the center line of the channel of the stream as it flows through this section, with the water rights appurtenant thereto, and the right to divert the water flowing therein. The petitioner also seeks the condemnation of certain tide and shore lands within the limits of state oyster reserve No. 1, but since this appeal was perfected, the city has determined that, by a change in its plans, the taking of this property can

be avoided, and its condemnation is no longer sought. By stipulation entered into on the day of trial, the petition was amended so as to add to the rights sought to be acquired the right to damage property upon which a certain state fish hatchery is located, so far as the same may be damaged, if at all, by the diversion of the waters of the north fork so that they will no longer reenter the main stream and flow past the hatchery.

The state, by its answer, raised the following affirmative defenses: (a) that the one-acre tract first referred to was acquired by the state, by purchase, for the purpose of using the same as a site for a fish hatchery, and that the land has been used in the past as an eyeing station by the state and will, when money is available therefor, be used as a site for a fish hatchery; (b) that the tract described in the amendment by stipulation is used by the state as a fish hatchery; (c) that the oyster bed reserve is not subject to condemnation; (d) that food salmon ascend the north fork of the Skokomish river during spawning season and use it as a spawning ground, and that the proposed dam and diversion of the waters will destroy, or seriously damage, the propagation of salmon therein; and finally, the state pleaded that the city had not acquired from the state supervisor of hydraulics a permit to divert the waters of the north fork.

The trial court held that the land, premises and rights sought to be acquired are not subject to condemnation, and denied the application for an adjudication of public use, and dismissed the petition. There was no finding that the use for which the property was sought to be taken was not a public use, and it seems to be assumed by both parties that the judgment of the trial court was based wholly upon its conclusion that, as the property sought to be acquired belonged to the

state, it was not subject to condemnation. How far the judgment of the trial court was influenced by the then attempt to acquire property within the oyster reserve, which has now been abandoned, we have not determined, and since we see no good reason why petitioner has not an undoubted right to abandon its attempt in that direction, we shall give that subject no further consideration.

The one-acre tract, called the eyeing station, was acquired by the state in 1900 or 1901. If there were any conditions as to its use by the state contained in the deed of conveyance, or if the state, at the time of acquiring the title or later, dedicated it to a peculiar use, no evidence to such effect has been pointed out, and we have discovered nothing to that effect in the record. The state opened an eyeing station there in April, 1901, and after four months of operation it was closed because not sufficiently successful to warrant further operation, and has been closed at all times since. If there has been any intention since that time on the part of the state to use the tract for any special purpose, there has been no official act or declaration to that effect, and therefore the case of *State v. Superior Court,* 91 Wash. 454, 157 Pac. 1097, is not applicable.

The mere fact that the state owns the property and has the right and power to devote it to a public use is not sufficient to prevent the city from diverting the water therefrom, under the broad powers conferred upon cities by our statute, Rem. Compiled Statutes, § 9488, or, in any event, the unfulfilled purpose of the state, indefinite as to time and conditions, must, under § 4, ch. 117, p. 448, Laws of 1917 (Rem. Comp. Stat., § 7354), give way to the immediate and definite use proposed by the city.

As to the right to divert the waters which now flow
past the state fish hatchery, it must first be borne in
mind that the hatchery is not located on the north fork,
but on the main stream below the junction of the north
and south forks, and about two miles above its mouth.
This property is now devoted to a public use, and if the
proposed diversion of the waters of the north fork
would destroy this public use, or so damage it as to
preclude its successful operation, our inquiry would end
here.   As we read the testimony, however, there is
nothing substantial to that effect.   It may be, as con-
tended by the state, that from the fact that condemna-
tion is sought will flow the presumption of damage to
the owner, but if so, it may be only because water is
taken which is not used or necessary to be used in
carrying out the public purpose to which the property
is devoted.   However that may be, the evidence dis-
closed by the record is sufficient to overcome any pre-
sumptions, and preponderates to the effect that, after
the proposed diversion, there will be ample water in the
main stream for the use of the hatchery, and that the
diversion will even be a benefit to the hatchery, in that
it will reduce the flow in times of high water, which
now causes damage.   We think the question here in-
volved is governed by the case of *Roberts v. Seattle,* 63
Wash. 573, 116 Pac. 25, and under that authority hold
that condemnation may be had.

As to the proposed taking of the strip 250 feet in
width along the water course through the school sec-
tion, the same authority establishes the right which the
city seeks to exercise.

The contention that the diversion of the waters will
destroy or seriously damage the propagation of food
fish, we cannot find to be sustained by a preponderance
of the evidence.   But even if it were, we would be re-

luctant to hold that the fish, by following their natural instincts, had devoted the stream to such a public purpose as would defeat the city's rights under the statutes hereinbefore cited.

Something is said regarding the navigability of the north fork at certain stages of the water for the floating of logs, but we cannot hold this to be public navigation which may not be impeded within the meaning of § 9488, *supra*.

It is finally urged that the city has not secured a permit from the state supervisor of hydraulics to appropriate and divert the waters. This question is governed by the water code, ch. 117, § 39, p. 465, Laws of 1917 (Rem. Comp. Stat., § 7391), and after a careful reading of that act we can find nothing therein which directly or inferentially provides that such a permit must be obtained before condemnation proceedings can be maintained.

For the reasons indicated, the judgment will be reversed and the case remanded for further proceedings in harmony with these views.

Reversed and remanded.

PARKER, C. J., FULLERTON, and MITCHELL, JJ., concur.

BRIDGES, J. (concurring)—I concur in the result reached in the foregoing opinion and in most of the reasoning, but am not sure I can agree to all that is there said. It is my view that the city may condemn as to the various tracts of land for the following reasons: As to the school section, because the state holds title to it in a proprietary capacity and it is not devoted to any public use; as to the eyeing station, because, while at one time it was devoted to a public use, that use has been abandoned and the land is now held by the state in a proprietary capacity; as to the fish

hatchery, because, while it is being devoted to a public use, the testimony shows that such use will not only not be interfered with but will be assisted by the proposed taking. I seriously doubt whether the case of *Roberts v. Seattle,* 63 Wash. 573, 116 Pac. 25, is controlling of or pertinent to this question.