[No. 35038.   Department Two.   April 23, 1959.]

THE CITY OF SEATTLE, *Petitioner*, v. THE STATE OF WASHINGTON, *Defendant and Relator*, THE SUPERIOR COURT FOR KING COUNTY, *Raymond Royal, Judge, Respondent.*[1]

[1]Reported in 338 P. (2d) 126.

*The Attorney General, E. P. Donnelly* and *H. T. Hartinger, Assistants,* for relator.

*A. C. Van Soelen, G. Grant Wilcox,* and *John P. Harris,* for respondent.

ROSELLINI, J.— The city of Seattle instituted a condemnation proceeding in the superior court of King county, seeking to acquire certain state school and capitol building lands situated outside the city limits for use in connection with its proposed Tolt river reservoir. An order adjudicating public use was entered, and the state petitioned for a writ of certiorari, alleging that the court was proceeding without jurisdiction, and that there was no appeal, nor any plain, speedy and adequate remedy at law. We have held that, in special proceedings of this type, where there is no statutory provision for an appeal, an adjudication of public use and necessity is not appealable, and a writ of certiorari will lie as a matter of right. *State ex rel. Northwestern Electric Co. v. Superior Court,* 27 Wn. (2d) 694, 179 P. (2d) 510.

There is but one question raised by the petition, and that is whether the city of Seattle has the right, under RCW 8.12.030 (Laws of 1915, chapter 154, § 1, p. 446; Laws of 1907, chapter 153, §1, p. 316) and/or under RCW (Sup. 1957) 80.40.010 (Laws of 1957, chapter 209, § 2, p. 796) to condemn state lands lying outside the city limits not presently dedicated to a public use. RCW 8.12.030 authorizing condemnation for municipal purposes, reads:

"Every city and town and each unclassified city and town within the state of Washington, is hereby authorized and empowered to condemn land and property, including state, county and school lands and property for streets, avenues, alleys, highways, bridges, approaches, culverts, drains, ditches, public squares, public markets, city and town halls, jails and other public buildings, and for the opening and widening, widening and extending, altering and straightening of any street, avenue, alley or

highway, and to damage any land or other property for any such purpose or for the purpose of making changes in the grade of any street, avenue, alley or highway, or for the construction of slopes or retaining walls for cuts and fills upon real property abutting on any street, avenue, alley or highway now ordered to be, or such as shall hereafter be ordered to be opened, extended, altered, straightened or graded, or for the purpose of draining swamps, marshes, tidelands, tide flats or ponds, or filling the same, within the limits of such city, and to condemn land or property, or to damage the same, either within or without the limits of such city for public parks, drives and boulevards, hospitals, pesthouses, drains and sewers, garbage crematories and destructors and dumping grounds for the destruction, deposit or burial of dead animals, manure, dung, rubbish, and other offal, and for aqueducts, reservoirs, pumping stations and other structures for conveying into and through such city a supply of fresh water, and for the purpose of protecting such supply of fresh water from pollution, and to condemn land and other property and damage the same for such and for any other public use after just compensation having been first made or paid into court for the owner in the manner prescribed by this chapter."

This section expressly authorizes the condemnation of land for

"aqueducts, reservoirs, pumping stations and other structures for conveying into and through [a city] a supply of fresh water, and for the purpose of protecting such supply of fresh water from pollution.  . . ."

While this provision is broad enough to authorize the condemnation of water resources for the purpose of supplying water to the city, a more express and detailed authorization is found in RCW (Sup. 1957) 80.40.010, which reads:

"A city or town may construct, condemn and purchase, purchase, acquire, add to, maintain, and operate waterworks, within or without its limits, for the purpose of furnishing the city and its inhabitants, and any other persons, with an ample supply of water for all purposes, public and private, including water power and other power derived therefrom, with full power to regulate and control the use, distribution, and price thereof: *Provided*, That all water

sold by a municipal corporation outside its corporate limits shall be sold at just and reasonable rates. ·

"For such purposes any city or town may take, condemn and purchase, purchase, acquire, and retain water from any public or navigable lake or watercourse, surface or ground, and, by means of aqueducts or pipelines, conduct it to the city or town; and it may erect and build dams or other works across or at the outlet of any lake or watercourse in this state for the purpose of storing and retaining water therein up to and above high water mark; and for all the purposes of erecting such aqueducts, pipe lines, dams, or water works or other necessary structures in storing and retaining water, or for any of the purposes provided for by this chapter, the city or town may occupy and use the beds and shores up to the high water mark of any such watercourse or lake, and acquire the right by purchase, or by condemnation and purchase, or otherwise, to any water, water rights, easements or privileges named in this chapter, or necessary for any of said purposes, and the city or town may acquire by purchase or condemnation and purchase any properties or privileges necessary to be had to protect its water supply from pollution. Should private property be necessary for any such purposes or for storing water above high water mark, the city or town may condemn and purchase, or purchase and acquire such private property. . . ."

■ The state, by statute, may delegate the power of eminent domain to one of its political subdivisions; but such statutes are strictly construed, and the power must be given in express terms or by necessary implication. *Tacoma v. Taxpayers of Tacoma*, 49 Wn. (2d) 781, 307 P. (2d) 567 (reversed on other grounds, 357 U. S. 320, 2 L. Ed. (2d) 1345, 78 S. Ct. 1209); *State ex rel. Chesterley v. Superior Court*, 19 Wn. (2d) 791, 144 P. (2d) 916. This court held, in *Tacoma v. Taxpayers of Tacoma, supra,* that a municipality does not have the power, under RCW 8.12.030 and 80.40.010, to condemn for municipal purposes state lands situated outside the city limits *previously dedicated to a public use.* Impliedly, we recognized that the power had been granted to condemn such lands not devoted to a public use, although the question was not discussed.

In *Tacoma v. State*, 121 Wash. 448, 209 Pac. 700, the city of Tacoma sought to condemn certain real property and

rights belonging to the state, for use in connection with a hydroelectric plant. The state contended that the properties and rights involved were either devoted to a public use or intended for such use, and the trial court held in its favor. On appeal, this court held that the only portion of the properties which was devoted to a public use would be benefited, not harmed by the contemplated diversion of water, and reversed the trial court on the authority of Rem. Comp. Stat., § 9488 [cf. RCW (Sup. 1957) 80.40.010] and *Roberts v. Seattle*, 63 Wash. 573, 116 Pac. 25, which upheld the constitutionality of Laws of 1907, chapter 153, § 1, p. 316 [cf. RCW 8.12.030], and further upheld the right of the city to condemn school lands within the city limits. It will be seen that the decision in *Tacoma v. State, supra*, was in fact an extension of the holding of *Roberts v. Seattle, supra*, since it was decided that the power to condemn state lands extends to lands outside the city limits as well as lands within the city limits.

But the relator urges that the question was not properly presented in the case, because the state conceded the authority of the city to condemn the land if it was not devoted to a public use, and the interpretation of the statute which it now urges was not considered by the court. According to the relator's proposed interpretation, the right to condemn property is confined to the purposes enumerated in what it designates as the "first category," beginning with the word "streets" on line four (RCW 8.12.030, as it appears herein) and ending with the words "alley or highway" on line nine.

Conceding that, as the relator contends, this court did not have before it, in *Tacoma v. State, supra*, the question now raised by the relator, we think the decision was nevertheless correct. The term "land and property," as used in RCW 8.12.030, is defined at the beginning as "including state, county and school lands and property." Nowhere in the section, which contains but one sentence, is there any language or any punctuation which would indicate a legislative intention that this definition should apply only to the

first "category" of purposes for which a municipality was authorized to condemn land. The relator advances no reason why the legislature should have seen fit to authorize the condemnation but not the damaging of state, county, and school lands and property for municipal purposes within the city limits; nor why it should have considered it desirable to subject such lands to condemnation for use as a public market—a mere municipal convenience—but not for use in connection with its water supply—a necessity.

The statute enacted by Laws of 1905, chapter 55, § 1, p. 84, authorizing the exercise of the power of eminent domain by municipalities, did not expressly include "state, county and school lands and property." However, § 6 of that act provided for service of notice upon the county auditor in case the land, real estate, premises or other property sought to be appropriated or damaged was state, county, or school land. It could have been argued that the inclusion of this provision necessarily implied that such land could be condemned.

However, only a month before the legislature convened, this court had held, in a condemnation action by a corporate water company, that a similar provision relating to the service of notice on the auditor would not raise an implication of authority to condemn, and that such authority must be expressly conferred. *State ex rel. Attorney General v. Superior Court*, 36 Wash. 381, 78 Pac. 1011. Thereafter, by Laws of 1907, chapter 153, § 1, p. 316, the act was amended, and state, county and school lands were, for the first time, expressly included within the definition of land and property, as that term was used in the act. This portion of the act has not been subsequently amended, and the state has never heretofore seen fit to question its applicability to all of the purposes for which land is authorized, under the act, to be taken or damaged.

The principles of statutory construction applicable in this instance are stated in 2 Sutherland, Statutory Construction, 222, 224:

"§ 3001 . . . It is customary for legislatures to specify either in definition sections or in general or special

statutes the meanings and limitations they intend to place on their words. Usually these provisions provide the most satisfactory source of specific meaning of words, but frequently they are ignored by court and counsel in the interpretation of the law."

"§ 3002. As a part of its legislative function, a legislature may enact law and define its meaning. Where in the same statute the legislature defines the meaning of the words used, it expresses most authoritatively its intent and its definitions and construction is binding on the courts. . . .

"Where a definition clause is clear it should control the meaning of words used in the remainder of the act, for that is the legislative intent."

■ In RCW 8.12.030 the scope of the term "land and property" is defined but once, and it is defined as "including state, county and school lands and property." Presumably that was the scope it was intended to have throughout the section, there being no expressed or implied intention to the contrary.

■ It is also a common rule of statutory construction that statutes in *pari materia* should be construed together and effect given to both. In this case, we find no conflict between RCW 8.12.030 and RCW 80.40.010. The latter act expressly authorizes the condemnation of any "public or navigable lake or watercourse, surface or ground" for waterworks purposes. That public lands are subject to condemnation is emphasized by the concluding sentence of the section, which authorizes condemnation of private property, should it be necessary. If the condemnation previously authorized in the section extended only to private property, the concluding sentence would be superfluous, and the authority to condemn any "public or navigable lake or watercourse, surface or ground" would be ineffective.

■ The relator also argues that capitol building lands, which constitute a part of the lands involved in this action, are immune from condemnation under RCW 79.01.128, which provides:

"Whenever any state lands, except capitol building lands, lie within the limits of any watershed over or through which is derived the water supply of any city or town in this state,

and such city or town shall desire to purchase or condemn the same, it may do so, and, in case of purchase, it shall have the right to purchase the land with the timber, fallen timber, stone, gravel, or other valuable material thereon without a separate appraisement thereof."

This is not a condemnation statute, but simply affirms the right of a city or town to condemn or purchase public lands for a municipal watershed. RCW chapter 79.01 is concerned with the administration of public lands and the powers and duties of the land commissioner in connection therewith. Jurisdiction over capitol building lands, at the time this act was passed, was vested exclusively in the state capitol commission (RCW chapter 79.24) and, therefore, such lands were properly excepted wherever, in the public lands act, reference was made to the powers or duties of the commissioner.

In the definition section of the public lands act, RCW 79.01.004, capitol building lands not devoted to or reserved for a particular use by law are included within the definition of state lands. It is admitted by the state in this action that the capitol building lands which the city of Seattle seeks to condemn are not devoted to or reserved for a particular use but are subject to sale. If the legislature had intended to exempt such state lands from condemnation, it would seem that it would have expressly so limited the term "state lands," as used in RCW 8.12.030, and the term "public or navigable lake or watercourse, surface or ground," as used in RCW 80.40.010. This the legislature did not see fit to do, and the relator suggests no reason why such a limitation should be inferred.

We conclude that the power of the city to condemn state lands not dedicated to a public use, for the purposes involved in this proceeding, both within and without the city limits, is authorized by statute both expressly and by necessary implication.

The order adjudicating public use is affirmed and the writ is dismissed.

WEAVER, C. J., FINLEY, OTT, and FOSTER, JJ., concur.