[No. 41931.    En Banc.    February 3, 1972.]

JOAN R. HANSON, *as Guardian, Appellant,* v. THE CITY OF
SEATTLE *et al., Respondents.*

*Koenigsberg, Brown, Sinsheimer & Meltzer,* by *William W. Brown,* for appellant.

*A. L. Newbould* and *E. Neal King,* for respondents.

HUNTER, J.—This is an action by Joan R. Hanson, guardian ad litem, in behalf of two minor children, Patrick D. McGinley and Michael J. McGinley, plaintiffs (appellants) against the City of Seattle and the members of the Firemen's Pension Board of the City of Seattle, defendants (respondents), for pension benefits to which they claim they are entitled upon the death of their father.

The father of the minor plaintiffs, who died on January 26, 1968, was a retired member of the City of Seattle fire department. At the time of his death he had been divorced from his wife and the care, custody and control of the children under the divorce decree had been awarded to the mother, reserving the right of reasonable visitation to the father and directing that he pay $100 per month to the mother for their support.

The minor plaintiffs filed a formal claim with the defend‑ ant pension board for benefits by reason of their father's death. There is no dispute that the children would be entitled to a pension benefit in the amount of their father's pension, $252.50, to share and share alike until the older child reached the age of 18, at which time the total amount would then be paid for the benefit of the younger child until he attained the age of 18, provided the children come within the definition of "child" or "children" contained in the Firemen's Relief and Pensions—1955 Act. RCW 41.18. This act provides, in part, as follows:

> "Child" or "children" means a fireman's child or children under the age of eighteen years, unmarried, and in the legal custody of such fireman at the time of his death.

RCW 41.18.010 (6).

The defendant pension board ruled that the children, by reason of the language of the divorce decree, were not in the legal custody of their father and their claim for bene-

fits, therefore, was denied. This action followed. The trial court sustained the ruling of the pension board and dismissed the action. The plaintiffs have appealed.

■ The plaintiffs contend it was not the intention of the legislature to preclude payment of benefits to children of divorced parents who were not residing with the father at the time of his death, and that the term "legal custody" is ambiguous in that it has a different meaning determined upon the context in which it is used. We agree. Used in the context other than the divorce decree, the father, as a parent, has the legal right to the custody of the children superior to any person other than the mother, unless he has been determined, in a judicial proceeding, to be an unfit person to have such custody. *In re Neff*, 20 Wash. 652, 655, 56 P. 383 (1899), we said:

> The order made by the superior court of Snohomish county, when the custody of the children was awarded to their mother in the divorce suit, was necessarily temporary in its nature, and it would require much more cogent reasons to deliver the custody of the children to a stranger than to their mother. The parents are the natural guardians and entitled to the care, control and society of their children; and when, unfortunately, the marital union is dissolved, as in this case, it may be necessary to commit the custody of the children to one to the exclusion of the other, and it will usually be done to the one least at fault, if competent. *But it does not necessarily deprive the other, as against any one else, of the custody of the children.*

(Italics ours.) Even under the context of a divorce decree, the father has the right to the custody of his children during the period of their visitations to him. We believe the phrase "legal custody" as used in the statute, must be construed in the broad sense in the light of the purpose and public policy upon which the pension act was premised.

■ The general purpose of pension legislation is not expressly spelled out in the 1955 act; however, it is implicit, from a review of other pension acts passed by the legislature of this state, that the fundamental objective of such

legislation is to provide benefits to the employees of the system, upon their disability or retirement, and to their dependents upon their disability or death. This legislative purpose was expressly stated in the 1969 Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, RCW 41.26, which states, in part, as follows:

> The purpose of this chapter is to provide for an actuarial reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and fire fighters, and to beneficiaries of such employees, thereby enabling such employees to provide for themselves and their dependents in case of disability or death, and effecting a system of retirement from active duty.

RCW 41.26.020.

The Firemen's Relief and Pensions—1947 Act, RCW 41.16.010(3) provides for pension benefits for children of firemen, defined, in part, as follows:

> "Child or children" shall mean a child or children unmarried and under eighteen years of age.

The 1955 act, as heretofore recited, provides benefits for children upon the death of a fireman as follows:

> "Child" or "children" means a fireman's child or children under the age of eighteen years, unmarried, and in the legal custody of such fireman at the time of his death.

The 1969 act, RCW 41.26.030(7), defines "child" or "children" that are entitled to benefits upon the death of a fireman as follows:

> "Child" or "children" whenever used in this chapter means every natural born child, posthumous child, child legally adopted prior to the date benefits are payable under this chapter, stepchild and illegitimate child legitimized prior to the date any benefits are payable under this chapter, all while under the age of eighteen years and unmarried.

The Volunteer Firemen's Relief and Pensions Act, RCW 41.24.160, refers to "child" or "children" entitled to benefits upon the death of a fireman as follows:

> Whenever a fireman dies as the result of injuries received, or sickness contracted in consequence or as the

result of the performance of his duties, the board of trustees shall order and direct the payment of the sum of one thousand dollars to his widow, or if there be no widow, *then to his dependent child or children,* or if there be no dependent child or children, then to his parents or either of them, and the sum of one hundred dollars per month to his widow during her life together with the additional monthly sums of twenty-five dollars for the youngest or only child and twenty dollars for each additional child of the member, *unemancipated or under eighteen years of age, dependent upon the member for support at the time of his death,* to a maximum total of two hundred dollars per month: *Provided,* That if there is no widow, or the widow dies while there are children, unemancipated or under eighteen years of age, then the amount of one hundred dollars per month shall be paid for the youngest or only child together with an additional twenty dollars per month for each additional of such children to a maximum of two hundred dollars per month until they become emancipated or reach the age of eighteen years; . . . *Provided,* That if the widow, child or children, or the parents, or either of them, marry while receiving such pension the person so marrying shall thereafter receive no further pension from the fund.

(Italics ours.)

The State-wide City Employees' Retirement Act, RCW 41.44, and the Teachers' Retirement Act, RCW 41.32, authorize the payment of benefits to the surviving "child" or "children" of a member or employee. The respective pension plans do not specifically define "child" or "children"; however, both acts contemplate payment of benefits to dependent minors of the deceased member, regardless of who has custody of the children.

■ The defendants argue that the declaration of policy announced in the 1969 act, RCW 41.26, *supra,* can be considered only in relation to the 1969 act. We disagree. It may be considered *in pari materia* with the other pension acts in determining the legislative purpose of pension legislation. See *Beach v. Board of Adjustment,* 73 Wn.2d 343, 438 P.2d 617 (1968); *State v. Bell,* 59 Wn.2d 338, 368 P.2d 177

(1962), *cert. denied,* 371 U.S. 818, 88 S. Ct. 34 (1962); *Seattle v. State,* 54 Wn.2d 139, 338 P.2d 126 (1959). From an examination of the foregoing pension and retirement acts, we believe it is inherent that the benefits, as related to dependent surviving children of a deceased employee covered under the particular system, have the objectives and purposes as stated in the policy statement of the 1969 act.

▇▇ The law is well established that pension legislation must be liberally construed most strongly in favor of the beneficiaries. *Benedict v. Board of Police Pension Fund Comm'rs,* 35 Wn.2d 465, 214 P.2d 171, 27 A.L.R.2d 992 (1950); *Cottam v. Los Angeles,* 184 Cal. App. 2d 523, 7 Cal. Rptr. 734, 85 A.L.R.2d 238 (1960). It is further well established, that pension statutes are to be construed as a whole and together with related acts with the view of promoting the objects and purposes of the lawmaking body, and their force and effect are not to be confined or restricted to the literal terms of the statute. Subsidiary provisions contained in pension acts must be construed consistently with the objects and purposes of the act. *See* 62 C.J.S. *Municipal Corporations* § 588(d) (1951); 70 C.J.S. *Pensions* § 2 (1951).

▇▇ Applying these tests to the definition of "child" or "children" under the 1955 act, requires that the phrase "legal custody" be given a functional and workable meaning consistent with the purpose and intent of the pension legislation. To construe the term "legal custody" in the technical context of a divorce decree, denying benefits to dependent children of a deceased fireman who are living with the divorced mother, is inconsistent with the objects and purposes of the pension legislation. Therefore, we hold that the *dependent surviving children* of a divorced father, who are in the custody of the mother under a divorce decree at the time of their father's death, come within the definition of "child" or "children" in the 1955 pension act. Moreover, in further support of this determination, our search of specialized works relating to insurance and pen-

sion plans disclosed no definition for "legal custody" indicating it to be a word of "art" for actuarial purposes.

The judgment of the trial court is reversed, and the pension board is directed to grant the benefits prayed for by the plaintiff minor children in this case.

FINLEY, ROSELLINI, and HALE, JJ., concur.

STAFFORD, J. (concurring)—I concur in the result of the majority opinion. Nevertheless, I do not agree with the means of statutory construction by which the opinion seeks to explain the definition of "child" or "children" used in the 1955 Firemen's Relief and Pensions Act. The majority opinion has accomplished its end by retroactive use of the preamble to the 1969 act as well as by reliance upon totally independent and nonapplicable pension systems of other public employees. I feel that this method of statutory construction uses much too broad a brush and to this extent I am compelled to agree with the dissent.

However, the definition of "child or children" contained in the 1955 act is rendered ambiguous by the requirement that such must be "in the *legal custody* of" the fireman at the time of his death. (Italics mine.) As indicated by the majority opinion, a search of specialized works relating to insurance and pension plans discloses that the phrase "in the *legal custody* of" is not a term of art for actuarial purposes. Further, the most frequent definition of the italicized phrase is couched in terms of some type of legal or physical servitude. Obviously such would not be applicable to the instant statute. Yet, every word in the statute must be given meaning, if possible. We must presume that the legislature did not use superfluous language. *State v. Lundquist*, 60 Wn.2d 397, 374 P.2d 246 (1962). In all logic, the phrase "legal custody" must be defined in terms of the parent-child relationship.

In this case the parents were divorced and the father was ordered to pay child support. He was not deprived of child custody, but on the contrary was awarded reasonable rights of visitation. Although physical custody of the children

may have rested with the mother, the father possessed a legal right of custody superior to that of the rest of the world. He also owed his children a legal duty to support them.

As between parents, "legal custody" is always subject to change based upon the welfare of the children. Custody can be changed from one parent to the other as often as the exigencies of the situation require. Further, it is recognized that upon the death of the parent having physical custody, the other parent has immediate right to the legal custody of the children as against the rest of the world. In short, while a parent's legal custody is substantial in nature it is still temporary, dependent upon the welfare of the children and dependent upon his surviving the other parent.

In such case it must be said that the parent who is not privileged to have immediate possession of the children is still vested with a substantial inchoate right to their legal custody.

Any other interpretation of the statute leads to absurd results. For example, if the trial court should award the legal custody of one child to the mother and of one to the father, as occasionally happens, only the child currently living with the father would be entitled to a pension. The sibling would receive nothing. But, should the court revise the placement of the children, the right to pension benefits would be reversed. Certainly, the legislature could not have intended that the definition of "legal custody" should rest upon the tenuous luck of mere temporary placement.

I agree that the judgment of the trial court should be reversed and the pension board directed to grant the benefits prayed for by the minor children.

HAMILTON, C.J., and WRIGHT, J., concur with STAFFORD, J.

NEILL, J. (dissenting)—I reluctantly dissent from the majority opinion. My reluctance is due to a strong personal desire to reach the result obtained by the majority, but I cannot agree that this court should ignore the plain and unequivocal language used by the legislature, thereby sub-

stituting our wishes and desires for the policy determination made by the legislature.

Mr. James D. McGinley commenced employment as a fireman for the City of Seattle on January 1, 1947. He was covered by the terms and provisions of the Firemen's Relief and Pensions—1947 Act (RCW 41.16). He continued in such employment until the time of his service connected disability retirement on February 26, 1961. In the interim, the legislature adopted the Firemen's Relief and Pensions —1955 Act (RCW 41.18). By the terms of the 1955 act (RCW 41.18.160), Mr. McGinley could have continued to be covered under the 1947 act. However, he did not avail himself of this right. His coverage was transferred into the 1955 act and he continued to make contributions under the terms of the 1955 act.[1]

· The issue bringing this case before the courts was created by the change of definition of a child of a fireman. Under the terms of the 1947 act (RCW 41.16.010), a child is defined as "a child or children unmarried and under eighteen years of age." The plaintiff children of Mr. McGinley are clearly beneficiaries under the 1947 act as thus defined. However, in enacting the 1955 act, the legislature added a further condition to the definition of a fireman's child in stating that such child is one "under the age of eighteen years, unmarried, and in the legal custody of such fireman at the time of his death."

This difference in definition becomes pivotal in this case as Mr. McGinley and his wife were divorced on February 7, 1962. The divorce decree recited:

> It is further ordered, adjudged and decreed that the plaintiff be and she is hereby awarded the care, custody and control of the two minor children, Patrick Daniel McGinley and Michael James McGinley, and the defendant be and he is hereby granted rights of reasonable visitation.

---

[1]Mr. McGinley died January 26, 1968, so that it is obvious that under any theory of applicable statutes the terms of the 1969 Law Enforcement Officers' and Fire Fighters' Retirement System Act (RCW 41.26) could not be the basis for relief.

Under *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956), the rights of Mr. McGinley and the benefits to which he and his benficiaries were entitled became vested at the commencement of his employment. The legislature expressly recognized his right to continue under the 1947 act, but he did not choose to do so and was transferred to the 1955 act.

Mr. McGinley's failure to stay within the 1947 act is understandable since the benefits to him upon retirement were considerably increased by the terms of the 1955 act. Had he stayed under the 1947 act, the maximum benefit he could receive was a monthly pension of $150. RCW 41.16.090. Under the 1955 act, Mr. McGinley was entitled to and was actually receiving a pension of $252.50 per month. RCW 41.18.040 and 41.18.050. Plaintiffs' father was covered by and was receiving increased benefits under the 1955 act, by the terms of which the children of the deceased fireman —to be eligible as beneficiaries under the act—must be "under the age of eighteen years, unmarried, and in the legal custody of such fireman at the time of his death."

The majority opinion strives to reach a desirable result by retroactive use of the preamble of the 1969 act and reference to totally independent and nonapplicable pension systems of other public employees in the state. Even a cursory reading of the various and sundry pension and retirement systems of the State of Washington clearly shows a lack of uniformity and the exercise by the legislature of independent judgment and its consideration of the varying types of service performed by different employee groups of the state. Thus, to read legislative intent by the language of a totally independent and different pension system for some other class of public employee as being applicable to the Firemen's Relief and Pensions—1955 Act is not warranted.

When the legislature amends a statute and a material change is made in the wording, it is presumed that the legislature intended a change in the law. *Home Indem. Co. v. McClellan Motors, Inc.,* 77 Wn.2d 1, 459 P.2d 389 (1969);

*In re Bale,* 63 Wn.2d 83, 385 P.2d 545 (1963). Every word in a statute is to be given meaning, if possible, as a legislative body is presumed not to have used superfluous words. *State v. Lundquist,* 60 Wn.2d 397, 374 P.2d 246 (1962). The legislative inclusion of the last condition, to wit, "in the legal custody of such fireman at the time of his death" cannot be ignored and read out of the statute. A decree of divorce entered by a court of competent jurisdiction which gives to the mother of the children the exclusive "care, custody and control" of the children must, by any reasonable definition, place "legal custody" of such children in the mother and not in the father.

The judgment of the trial court should be affirmed.

Petition for rehearing denied April 21, 1972.