[No. 15883-0-I.  Division One.  January 21, 1986.]

ALFRED GEIGER, *Appellant,* v. THE DEPARTMENT OF RETIREMENT SYSTEMS, ET AL, *Respondents.*

*Dubuar, Lirhus & Engel, Albert Lirhus, Betts, Patterson & Mines,* and *John C. Patterson,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Donald F. Cofer, Assistant; Preston, Thorgrimson, Ellis & Holman* and *Marc Kittner,* for respondents.

WILLIAMS, J.—From October 19, 1968, until January 1, 1973, Alfred Geiger was employed by the Seattle Transit System, a division of the Seattle city government. On January 1, 1973, the Municipality of Metropolitan Seattle assumed the operations and employees of Seattle Transit System and Metropolitan Transit Corporation, a private transportation company. On April 10, 1973, Metro sent a letter to the former STS employees regarding retirement plans. The letter stated:

Each former City of Seattle employee may choose one of the following:

1. Continue with Seattle City Employees' Retirement System.

2. Terminate from the City system, withdraw his or her contribution and join the State system for benefits to be earned from now on.

3. Freeze benefits earned to date in the City's system (the pension benefit to be received at retirement) and

join the State system for benefits to be earned from now on.

Employees choosing to transfer from their previous plan to the State system will not be able to transfer any past service credits.

Clerk's Papers, at 44. Geiger chose the second option, withdrew his contributions from the Seattle City Employees' Retirement System and became a member of the Washington Public Employees' Retirement System. He signed the following statement:

I, Alfred Geiger, now employed by the Municipality of Metropolitan Seattle and entitled under RCW 35.58.390 to be deemed to remain an employee of the City for the purposes of the City of Seattle Employees' Retirement System under Ordinance 78444 as amended and entitled to all the rights and benefits under said system, hereby withdraw as a member of said system and in such connection request that the Board of Administration of the City Employees' Retirement System return to me my accumulated contributions and I hereby waive any and all rights that I may have under RCW 35.58.390 Section 39 and further waive any and all rights and benefits under Ordinance 78444 as amended, of the City of Seattle.

Clerk's Papers, at 48.

Former MTC employees received a similar letter which gave them the option of continuing with the MTC pension plan, withdrawing from that plan and joining the state pension system or freezing their benefits in the MTC plan and joining the state pension system. That letter also stated, "[e]mployees choosing to transfer from their previous plan to the State system will not be able to transfer any past service credits." Clerk's Papers, at 46.

Pursuant to 49 U.S.C. § 1609(c) (1976) and RCW 35.58-.265, Metro and Local 587 of the Amalgamated Transit Union, AFL–CIO, which represented the employees of STS, entered into a labor agreement which provided, in pertinent part:

(2) All rights, privileges, and benefits (including pension rights and benefits) of employees covered by this

agreement (including employees having already retired) under existing collective bargaining agreements or otherwise, or under any revision or renewal thereof, shall be preserved and continued; provided, however, that such rights, privileges, and benefits not previously vested may be modified or altered by collective bargaining and agreement of the parties hereto to substitute offsetting rights, privileges, and benefits of equal or greater economic value. Members and beneficiaries of any pension and retirement system shall continue to have rights, privileges, and benefits under and with respect to such established pension and retirement system.

. . .

(18) All of the persons employed by Metro pursuant to this agreement shall be appointed to comparable positions with Metro without examination, and these employees shall be credited with their years of service with respect to their former transit system for purposes of sick leave, seniority, vacation, and pension in accordance with the records and any labor agreements of their former system. Members and beneficiaries of any pension or retirement system, or other benefits established by that transportation system, shall continue to have the rights, privileges, benefits, obligations, and status with respect to such established system. Metro shall assume the obligations of the acquired system with regard to wages, salaries, hours, working conditions, sick leave, health and welfare [insurance,] and pension or retirement provisions for employees. Except as modified by collective bargaining and agreement of the employees through their Union representatives, as provided by paragraph (2) of this agreement, no employee of an acquired system shall suffer any worsening of his wages, seniority, pension, sick leave, vacation, health and welfare insurance, or other benefits by reason of his transfer to a position with Metro; provided, however, that this paragraph shall not be deemed to accord to any such employees past service credits under any retirement system in which they participate as Metro employees, unless such credits have been otherwise obtained by collective bargaining and agreement of such employees through their Union representatives as provided by paragraph (2) of this agreement.

Clerk's Papers, at 56–70.

Although no labor agreement between Metro and Local 1384 of the Amalgamated Transit Union, AFL–CIO, which represented the employees of MTC, is in the record, we assume their agreement was identical to that between Metro and Local 587. Notwithstanding the absence of any agreement among the Union, Metro and the state retirement system regarding past service credit, in 1974 the former employees of MTC were granted past service credit. AGLO 35 (1974).

On May 18, 1979, Geiger petitioned the Director of Retirement Systems to grant him past service credit pursuant to RCW 41.40.160, which provides:

> Creditable Service. . . .
> (2) Employees of a public utility or other private enterprise all or any portion of which has been heretofore or may be hereafter acquired by a public agency as a matter of public convenience and necessity, where it is in the public interest to retain the trained personnel of such enterprise, all service to that enterprise shall, upon the acquiring public agency becoming an employer as defined in RCW 41.40.010(4) be credited on the same basis as if rendered to the said employer: *Provided,* That this shall apply only to those employees who were in the service of the enterprise at or prior to the time of acquisition by the public agency and who remain in the service of the acquiring agency until they attain membership in the state employees' retirement system; and to those employees who were in the service of the enterprise at the time of acquisition by the public agency and subsequently attain membership through employment with any participating agency: *Provided further,* In the event that the acquiring agency is an employer at the time of the acquisition, employer's contributions in connection with members achieving service credit hereunder shall be made on the same basis as set forth in RCW 41.40.361 for an employer admitted after April 1, 1949.

Geiger's petition was referred to the Assistant Director of Retirement Systems, who entered findings of fact, conclusions of law and an order denying the petition. Pursuant to RCW 41.40.412, Geiger sought a hearing before the Director and, pursuant to RCW 41.40.414, received a de novo hear-

ing before a hearing examiner, who considered the parties' stipulation of facts and issued proposed findings of fact, conclusions of law and an order denying Geiger's petition. The Director adopted those proposed findings, conclusions and order. Geiger petitioned the Superior Court for review of the Director's decision, as permitted by RCW 34.04.130. The Superior Court upheld the Director's decision, and Geiger appeals.

The issue is solely one of statutory construction: Is a transportation system owned by a city a "public utility or other private enterprise" under RCW 41.40.160(2)? It is not, for several reasons. First, the qualifying words "or other private enterprise" refer back to and restrict the term "public utility" to only privately owned public utilities. *See Caughey v. Employment Sec. Dep't,* 81 Wn.2d 597, 602, 503 P.2d 460, 56 A.L.R.3d 513 (1972); 2A N. Singer, *Statutory Construction* § 47.33, at 245 (4th ed. 1984). Second, RCW 41.40.160(2) should be construed in accordance with RCW 41.20.160 and RCW 41.44.120(5), which are limited to private enterprises. *See Hanson v. Seattle,* 80 Wn.2d 242, 246–47, 493 P.2d 775 (1972); 2A N. Singer, § 51.02, at 453. Third, the Director of Retirement Systems' construction of these words should be accorded substantial weight. *See Overton v. Economic Assistance Auth.,* 96 Wn.2d 552, 555, 637 P.2d 652 (1981). Because Geiger was a public employee prior to his employment with Metro, he is not entitled to past service credit under RCW 41.40.160(2).

Geiger contends that if RCW 41.40.160(2) excludes him from receiving past service credit, he is denied equal protection of the law under the fourteenth amendment to the United States Constitution and Const. art. 1, § 12. Because this statute does not affect a fundamental right, it does not violate equal protection if (1) it applies alike to all persons within the designated class; and (2) reasonable grounds exist for distinguishing between those who fall within and those who fall without the class. *Automobile Drivers & Demonstrators Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 422, 598 P.2d 379 (1979),

*appeal dismissed,* 444 U.S. 1040 (1980). The burden is on the challenger to prove that a classification does not rest on a reasonable basis. *Automobile Drivers,* at 422. The Legislature intended past service credit to be an inducement to experienced private employees to stay on the job after their companies were acquired by public entities. *Marysville v. State,* 101 Wn.2d 50, 58, 676 P.2d 989 (1984). The Legislature could well have believed that public employees needed no such inducement when their employer changed from one public entity to another because their pension rights would be protected under RCW 41.40.155.[1] Because there is a reasonable ground for distinguishing between the former employees of MTC and those of STS, RCW 41.40.160(2) does not deny Geiger equal protection of the law.

Affirmed.

GROSSE, J., concurs.

SCHOLFIELD, A.C.J., concurs in the result.

Review denied by Supreme Court May 6, 1986.

---

[1]RCW 41.40.155 provides:

"Change of employment—Protection of rights. The retirement board is empowered to enter into agreements with the boards or other authorities of retirement systems operated by the state or a political subdivision thereof for the purpose of protecting the retirement rights or benefits of public employees who may alter their membership status by changing employment from one public agency to another."