[No. 42751. En Banc. August 9, 1973.]

CLYDE G. KNOWLES, *Respondent*, v. FRED HOLLY *et al.*, *Appellants.*

*Ted Roy* (of *Hovis, Cockrill & Roy*), for appellants.

*Robert L. Harris* (of *Mason, Foley & Harris*), for respondent.

ROSELLINI, J.—This is an election contest, filed by the respondent under the provisions of RCW 29.65, to obtain an annulment of the election of the appellant to the office of County Commissioner, District No. 1 for Klickitat County (referred to herein as Commissioner). It was successfully contended in the court below that the declaration of election of the appellant had been the result of the counting of illegal votes. Each party on this appeal contends that the trial court erroneously construed and applied the state's election laws insofar as it rejected that party's theories.

The respondent was the Democratic Party's nominee for the position of Commissioner, having narrowly defeated the appellant in the primary election held in September 1972. After his defeat, the appellant campaigned as a write-in candidate. The general election in November of that year was conducted exclusively by paper ballot. The ballot was printed in accordance with the form set forth in RCW 29.30.080. In the upper left corner there appeared the following:

INSTRUCTIONS: If you desire to vote for any candidate, place an X in the ☐ at the right of the name of such candidate. If you desire to vote "For" or "Against" any Measure or Constitutional Amendment, place an X in the appropriate ☐ following such Measure or Constitutional Amendment.

There were no instructions for write-in voting. Nine columns of federal, state and local offices, with the names of party nominees, were headed by the names of nine political parties. In the columns of the two major political parties, there was no space which could be used for writing in the name of a candidate for any federal or state office. However, the boxes for the local offices, all of which appeared at the bottom of the ballot (those of County Commissioner, 1st District and 3d District, and Precinct Committeeman), each contained a dotted line upon which no name was printed, with a ☐ to the right of it.

According to the certified results of a recount of the ballots demanded by the respondent after the appellant had been declared the winner, 2,016 votes were cast for the respondent and 2,177 voters wrote in the name of the appellant for the office of Commissioner.

It was the contention of the respondent in the lower court that irregularities in the marking of 322 ballots made them ineligible to be counted in the appellant's favor. The trial court did not agree with this contention as to every questioned ballot, but it did find that the voter's intention to vote for the appellant was not clearly manifested in 213 of the ballots which had been credited to the appellant, and held that these ballots could not be counted. As a result, the total number of votes for the appellant was reduced to 1,964, which was 52 votes fewer than the respondent's total of 2,016, and the County Auditor was directed to issue a certificate of election to the respondent.

The appeal has been expedited by the parties and the court.

There were several different types of irregularities which occurred in the balloting. Some voters wrote in the correct surname but the wrong given name; a few misspelled the appellant's name. Others wrote his name correctly but placed it in the Commissioner, 3d District box or the Precinct Committeeman box. But the largest number of irregularities occurred in two categories. One hundred five electors wrote the name of the appellant correctly in the

Democratic column and in the Commissioner, 1st District box, but did not place an X in the □ to the right of the name. With regard to these ballots, the lower court held that the intention of the voter to vote for the appellant for the office of Commissioner was sufficiently manifested to sustain the finding of the election board. The respondent assigns error to this ruling.

One hundred sixty-four voters wrote the name of the appellant in the box designated County Commissioner, 1st District, but placed it in the column of another political party. One hundred fifty-seven of these voted for the appellant in the Republican Party column and seven in the column designed Taxpayer$ Party to Cut Taxe$. The lower court held that the ballots cast by these voters did not clearly manifest an intent to vote for the office of Commissioner.

The appellant assigns error to the latter ruling. The conclusions which we have reached in regard to these two categories of ballots determine the outcome of the election and it will therefore be unnecessary to consider the question whether the trial court erroneously rejected ballots showing other types of irregularities.

We will consider first the question whether, as contended by the respondent, RCW 29.51.100 requires a voter to mark a cross "X" after the name of a write-in candidate to indicate his choice. That section provides:

> On receipt of his ballot in an election the elector shall forthwith and without leaving the polling place retire alone to one of the places, booths, or apartments provided to prepare his ballot. Each elector shall prepare his ballot by marking a cross "X" after the name of every person or candidate for whom he wishes to vote.
> In case of a ballot containing a constitutional amendment or other question to be submitted to the vote of the people the voter shall mark a cross "X" after the question, for or against the amendment or proposition, as the case may be. Any elector may write in the blank spaces the name of any person for whom he may wish to vote: *Provided*, That where a partisan office is concerned, the voter must not only write in the name of the candidate

but also the party affiliation of such person pursuant to the provisions of RCW 29.51.170 as now or hereafter amended.

It will be observed that an elector who writes in the name of "any person for whom he may wish to vote" is not expressly directed to mark a cross after the name. The only express requirements are that he write the candidate's name and designate his political party pursuant to the requirements of RCW 29.51.170. RCW 29.51.170 also provides that a voter may write in the name of any person for whom he desires to vote for any office; and further provides "and such vote shall be counted the same as if the name had been printed on the ballot and marked by the voter." This statute likewise contains no requirement that the name be followed by an "X". If there is a requirement that a cross be placed after the name of the elector's choice, it must be found in the first paragraph of RCW 29.51.100, which does not expressly purport to deal with the procedure for voting for write-in candidates.

The direction that a ballot be marked by placing an "X" after the name of the candidate would seem to have its logical application where the names of candidates are printed on the ballot and the elector makes a choice among them. If an elector does not place an "X" after the name of any candidate printed on the ballot but instead writes, in the space provided for the office in question, the name of a person whose name is not printed on the ballot, there should be no question but that he has expressed his choice for the office. The placing of an "X" after the name may add emphasis, but the intent is clear without it.

The legislature has recognized, in RCW 29.54.050, that the purpose of formal requirements in marking the ballot is to provide a means of expressing the voter's intent in an intelligible manner. That section declares, *inter alia,*

[t]hose parts of ballots must not be counted which:

. . .

(2) Are not marked with sufficient definiteness to determine the voter's choice or intention: *Provided,* That

no ballot or part thereof shall be rejected for want of form or mistake in initials of names if the election board can determine to their satisfaction the person voted for and the office intended.

Most recently enacted in Laws of 1965, ch. 9, the substance of this provision was first adopted by the territorial government in Laws of 1865, § 2, p. 38. This court, in the early case of *State ex rel. Orr v. Fawcett,* 17 Wash. 188, 49 P. 346 (1897), observed that the legislature had recognized the difficulty that the ordinary citizen might experience in understanding the ballot and following the directions given him in casting his vote, and had, in this provision, declared that the voter's intention should be given effect in spite of errors in marking the ballot, if that intention could be ascertained.

■ The elective process, this court said,

though a constitutional privilege and right, must be exercised under such reasonable legislative restrictions as will prevent intimidation, bribery and fraud and secure an honest, untrammeled and genuine expression of public sentiment. It is also true, however, that in the absence of constitutional inhibition all statutes tending to limit the citizen in the exercise of the right of suffrage should be liberally construed in his favor. If his ballot is rejected, it must come within the letter of the prohibition, and when the statute specifically declares under what conditions ballots shall be rejected, courts should not enlarge those conditions, or make other or different conditions from those expressed in the statute grounds for rejecting the ballots. It will be noted that our statute provides only one condition under which a ballot should be rejected, viz.: a ballot from which it is impossible to determine the elector's choice, and, after all, this should and must be the intention of the legislature. The important thing is to determine the intention of the voter and to give it effect.

17 Wash. at 199. *Accord, State ex rel. Hufford v. Eddings,* 86 Wash. 233, 149 P. 945 (1915) and *State ex rel. Robeson v. Clark,* 28 Wn.2d 276, 182 P.2d 68 (1947).

Since the intent of an elector can be expressed by writing the name of his candidate in the space provided opposite the office intended, a requirement that he also mark an

"X" after the name would serve no useful purpose. A requirement of this nature is inconsistent with the legislative intent expressed in RCW 29.54.050. Construing the provisions of RCW 29.51.100 liberally in favor of the voter, and to harmonize with other applicable statutes, we read it as requiring the marking of an "X" after a name only where the candidate's name is printed on the ballot.

The election board and the superior court correctly refused to reject the 105 ballots upon which the voters had written the name of Fred Holly but had not marked an "X" after the name.

We turn to the appellant's contention that the trial court erroneously set aside the election board's finding that the intent of 164 voters had been sufficiently manifested, even though they placed his name in the column of a political party with which he was not affiliated. The answer to this contention depends upon the construction to be given to the proviso in RCW 29.51.100, which reads:

> *Provided,* That where a partisan office is concerned, the voter must not only write in the name of the candidate but also the party affiliation of such person pursuant to the provisions of RCW 29.51.170 as now or hereafter amended.

This is what is known as a "reference" statute. Reference statutes are those which refer to, and by reference adopt wholly or partially, preexisting statutes or which refer to other statutes and make them applicable to an existing subject of legislation. They are frequently used to avoid encumbering the statute books by unnecessary repetition, and they are recognized in this state as an approved method of legislation. *Roehl v. PUD 1,* 43 Wn.2d 214, 261 P.2d 92 (1953).

Courts are unanimous concerning the primary legal effect of the statutory reference whenever an act of the legislature brings into itself, by reference, the terms of another act. The precepts and terms to which reference is made are to be considered and treated as if they were incorporated into and made a part of the referring act, just as completely

as if they had been explicitly written therein. *State ex rel. Toll Bridge Authority v. Yelle,* 32 Wn.2d 13, 200 P.2d 467 (1948); *Pacific First Fed. Sav. & Loan Ass'n v. Pierce County,* 27 Wn.2d 347, 178 P.2d 351 (1947).

RCW 29.51.170, which, under this doctrine, is incorporated into RCW 29.51.100, provides:

> At any election or primary, any voter may write in on the ballot the name of any person for whom he desires to vote for any office and such vote shall be counted the same as if the name had been printed on the ballot and marked by the voter: *Provided,* That when voting machines or voting devices and ballot cards are used, no write-in vote for any candidate for a partisan office at either a state primary election or state general election shall be valid unless a political party affiliation is also written by the voter after the candidate's name. The same procedure must be followed when paper ballots are used for partisan offices at a state primary election. For such write-in voting, it shall not be necessary for a voter to write the full name of the political party concerned. Any abbreviation including the first letter of the political party name shall be acceptable as long as the precinct election officers can determine to their satisfaction the person voted for and the political party intended.

The proviso lists the circumstances under which the write-in voter must designate a political party affiliation for his candidate. They include state primaries and state general elections where voting machines or voting devices and ballot cards are used, and state primaries where paper ballots are used. They do not include state general elections where paper ballots are used. Remembering that statutes regulating the exercise of the franchise must be liberally construed in favor of the voter, and applying the maxim expressio unius est exclusio alterius,[1] it would appear that there is no statutory requirement that an elector designate a political party affiliation when he writes in the name of

---

[1] If a statute specifically designates things or classes of things upon which it operates, an inference arises that all things or classes of things omitted from the statute were intentionally omitted by the legislature. *Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 459 P.2d 633 (1969); *State v. Roadhs,* 71 Wn.2d 705, 430 P.2d 586 (1967).

his candidate for an office on a paper ballot in a general election.

But the respondent maintains that the legislature has manifested a contrary intent in RCW 29.51.100, for it has provided that, where a partisan office is concerned, the voter "must not only write in the name of the candidate but also the party affiliation of such person." He insists that this language is broad enough to apply to all elections, however conducted. However, we cannot overlook the qualifying words which follow this language. These words are "pursuant to the provisions of RCW 29.51.170 as now or hereafter amended."

█ "Pursuant to" means "in the course of carrying out: in conformance to or agreement with: according to." *Webster's Third New International Dictionary* (1968), at 1848. It is a restrictive term. *State ex. rel. Ickes v. Slinger,* 79 Ohio App. 334, 73 N.E.2d 385 (1946); *Fabianich v. Hart,* 31 A.2d 881 (D.C. Mun. App. 1943).

RCW 29.51.100 does not purport to amend the provisions of RCW 29.51.170. In it, the legislature did no more than to recognize and incorporate those provisions. The gist of the statute is that in a partisan election, the voter who writes in the name of a candidate must comply with the applicable statute requiring political party designation by such voters.

█ This interpretation also is indicated by the familiar rule of statutory construction—that where there is a conflict between one statutory provision which deals with a subject in a general way and another which deals with the same subject in a specific manner, the latter will prevail. *State ex rel. Phillips v. State Liquor Control Bd.,* 59 Wn.2d 565, 369 P.2d 844 (1962). The sentence relied upon by the respondent is general, the proviso is specific.

█ The respondent would have us believe that it was through oversight that the legislature omitted a requirement that the party of the write-in candidate be designated by the voter in a general election where paper ballots are used. He contends that there is no logical reason to require such a designation in a primary and not require it in a

general election. Of course, this court cannot supply omissions resulting from legislative oversight. *State ex rel. Thigpen v. Kent,* 64 Wn.2d 823, 394 P.2d 686 (1964). We do not agree, however, that the legislature had no logical basis for making a distinction. The purpose of the primary is to nominate party candidates. The legislature has recognized that a person may seek the nomination of more than one party. RCW 29.30.080 (6) provides that no candidate's name shall appear more than once upon the ballot but that a candidate who has been nominated by more than one party may choose the political party under whose title he desires to have his name placed.

Since the purpose of the primary is to designate party nominees, and since a person may be a candidate in more than one party, and since the persons who count the votes cannot be expected to know the party affiliations of write-in candidates, the legislative purpose in requiring political party designation is manifest.

It also should be observed that the requirement of such designation in primary elections is consistent with the provision of RCW 29.54.050 declaring that no ballot or part thereof shall be rejected for want of form if the election board can determine to its satisfaction the person voted for and the office intended. The "office intended" in a primary is the party nominee for a given office.

On the other hand, to require a voter to designate the party of his write-in candidate in a general election serves no similar purpose. True, the candidates whose names are printed on the ballot are listed according to their party affiliations, but it would seem that the purpose of this is to aid the voter who wants to vote for his party's nominees but does not know their names. Certainly we can find in RCW 29.54.050 no expression of a legislative intent that a ballot should be rejected if a voter in a general election who has otherwise satisfactorily manifested his choice for an office has not correctly designated his candidate's political party affiliation.

The respondent's theory that the legislature in-

tended the requirement of political party designation to apply in all state primary and general elections would render much of the language of the proviso unnecessary and superfluous. It is presumed that the legislature does not deliberately engage in unnecessary or meaningless acts. *Roza Irrigation Dist. v. State*, 80 Wn.2d 633, 497 P.2d 166 (1972).

We note that the legislature, in drafting its sample ballots, neglected to include instructions for voting for write-in candidates and to include a space designated as a place to vote for write-in candidates. Where is the voter to write the name? He knows that his candidate is not the nominee of any party and yet the only spaces on the ballot are under party headings. He may not know the party affiliation, if any, of his candidate. This is not a problem for him in a primary election, of course, since his specific purpose is to vote for his candidate as the nominee of a particular party.

In the case before us, the appellant had been defeated in the Democratic Party primary. The voter who wished to vote for him as a write-in candidate might well reason that he should not place his name in the Democratic Party column, since that party had rejected him in the primary. There was no space for an independent candidate. It is not surprising that some voters reasoned that the logical place for his name was in some column other than the Democratic column. Such voters were forced to choose a column of a party with which the appellant was not associated.

There is no statute designating the place on the ballot where the names of write-in candidates should be written. RCW 29.51.170 provides that the voter may write the name "on the ballot." RCW 29.51.100 provides that any elector may write "in the blank spaces" the name of any person for whom he may wish to vote. The sample ballot for general elections contained in RCW 29.30.080 shows no blank spaces except in the column headed "Other Party." If a ballot contained a blank column, of course, this would appear to be a logical place to vote for a write-in candidate.

But the sample ballot in the record before us does not exhibit such a column. Of necessity, the voter had to write the name either under a political party heading or in the margin.[2] The fact that he chose a blank space under the name of a party with which the appellant had no connection did not render his vote fatally ambiguous.

We are convinced that the election board was justified in determining that voters who wrote the correct name of the appellant in the spaces marked "County Commissioner— 1st Dist." had satisfactorily manifested their intention to vote for the appellant for that office, even though they wrote the name in a column devoted to candidates of a political party to which the appellant had no commitment.

Adding the 164 votes falling into this category to the 1,960 votes which were tallied from ballots regular on their face and those regular except for the omission of cross-marks, brings the total of votes cast for the appellant to 2,124, being 108 more than the total votes cast for the respondent. Accordingly, the judgment must be reversed and the certification made by the election board must be reinstated.

It is so ordered.

HALE, C.J., FINLEY, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

[2]While we have concluded that in a general election, where paper ballots are used, a voter can designate his candidate and the office intended without signifying a political party affiliation of the candidate, we do not venture an opinion upon the question whether the legislature can properly require such a designation. We note that the legislature, in the 1973 extraordinary session, amended RCW 29.51.170 but did not make the requirement of political party designation applicable to general elections where paper ballots are used. Laws of 1973, 1st Ex. Sess., ch. 121. The legislature has seen fit to require such designation where voting machines or voting devices and ballot cards are used. We are not advised of the purpose of this legislation but assume it may have some connection with the mechanics of these voting systems. The question whether the regulation is reasonable as applied to voting in general elections where such devices are used is not before us at this time.