[No. 2375-1.    Division One.    October 7, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN MICHAEL ROCHELLE, JR., *Appellant.*

888

*Olwell, Boyle & Hattrup* and *Ned Olwell,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *James J. Lamont, Deputy,* for respondent.

JAMES, J.—Defendant John Michael Rochelle, Jr., waived jury trial and was convicted of negligent homicide. Rochelle's principal contention on appeal presents a question of first impression. Does the refusal of a chemical breath test by one arrested for drunken driving prevent the State from introducing evidence of his blood alcohol content obtained by a urinalysis? We hold that it does not and affirm.

The State charged that, while under the influence of alcohol and narcotic drugs, Rochelle recklessly drove his automobile and caused an intersection collision. A passenger in the other vehicle was killed. Immediately following the collision, Rochelle was taken to a hospital suffering from a concussion. A state patrol officer asked Rochelle's treating physician to provide the State with a urine sample for blood alcohol analysis. While conscious, Rochelle voluntarily provided a nurse with a urine sample, but he was not informed that the State had requested it or that the sample

was to be analyzed for blood alcohol content. Prior to the taking of the urine sample, however, Rochelle had been advised of his constitutional *Miranda* rights. He had also been advised of the provisions of the implied consent law, RCW 46.20.308, and had refused the breath test for blood alcohol.

The threshold issue raised by Rochelle's appeal is his contention that there was no evidence to establish that he was under arrest at the time the urine sample was taken. His argument relies upon *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966), in which the United States Supreme Court held that the taking of a blood sample from a suspect who is under arrest did not violate his constitutional immunities from self-incrimination or unreasonable search and seizure. He argues that if he was not under arrest, then the taking of a sample of a bodily substance is not permissible. *State v. Wetherell*, 82 Wn.2d 865, 514 P.2d 1069 (1973).

This contention is without merit. The uncontroverted testimony of one of the officers called by the State was that Rochelle had been placed under arrest by another officer. Though hearsay, the testimony was admitted without objection. It was therefore competent evidence sufficient to support the finding that he was under arrest. *Carraway v. Johnson*, 63 Wn.2d 212, 386 P.2d 420 (1963); *State v. Carlson*, 2 Wn. App. 104, 466 P.2d 539 (1970).

Rochelle's principal claim of error is that the taking of the urine sample was unlawful and therefore the results of the urinalysis should have been suppressed. Rochelle concedes that under the rule of *Schmerber*, the unconsented taking of a urine sample may be constitutionally permissible. But he contends that RCW 46.20.308, the implied consent statute, gave him the right to a warning prior to the taking of the urine sample and the right to refuse.

RCW 46.20.308, enacted as section 1 of Initiative 242 in 1968, was adapted from the implied consent provisions of the Uniform Vehicle Code. However it differs in important respects. RCW 46.20.308 provides in part:

Any person who operates a motor vehicle upon, the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his *breath or blood* for the purpose of determining the alcoholic content of his blood . . .

(Italics ours.) Section 6-205.1 of the Uniform Vehicle Code (1968 version) provides in part:

(a) Any person who operates a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of § 11-902, to a chemical test or tests of his *blood, breath, or urine* for. the purpose of determining the alcoholic content of his blood . . .

(Italics ours.)

▮▮▮ The omission of the word "urine" from the Washington statute is significant.[1]

If a statute specifically designates things or classes of things upon which it operates, an inference arises that all things or classes of things omitted from the statute were intentionally omitted by the legislature. *Washington Natural Gas Co. v. PUD 1*, 77 Wn.2d 94, 459 P.2d 633 (1969); *State v. Roadhs*, 71 Wn.2d 705, 430 P.2d 586 (1967).

*Knowles v. Holly*, 82 Wn.2d 694, 701 n.1, 513 P.2d 18 (1973). Further, courts cannot amend statutes by judicial construction even if an omission appears to be an oversight. *Knowles v. Holly, supra* at 703; *Vannoy v. Pacific Power & Light Co.*, 59 Wn.2d 623, 629, 369 P.2d 848 (1962). Princi-

---

[1] All 50 states and the District of Columbia have enacted some form of "implied consent" statute. Of these, the statutes of 17 jurisdictions imply consent for testing blood, breath or urine, 9, including Washington, imply consent to take only a blood or breath test, 11 imply consent solely for a breath test, 7 imply consent for a blood, breath, urine or saliva test, and 5 states imply consent for blood, breath, urine or other bodily substances. Maine implies consent to a blood or urine test and in Maryland, drivers expressly consent to a blood, breath or urine, test. *See National Committee on Uniform Traffic Laws and Ordinances, Driver Licensing Laws Annotated* § 6-205.1(a), at 269 (1973). Thus, 19 other jurisdictions have chosen not to imply consent to a urine test. However, our research has not revealed a case in any of these jurisdictions raising the issue presented here.

ples of judicial construction govern direct legislation by the people as well as enactments by the legislature. *Department of Revenue v. Hoppe,* 82 Wn.2d 549, 512 P.2d 1094 (1973); *Metcalf v. Department of Motor Vehicles,* 11 Wn. App. 819, 525 P.2d 819 (1974).

Rochelle argues that RCW 46.61.506, which is specifically referred to in the implied consent law, RCW 46.20.308, and which was also enacted by the people as section 3 of Initiative 242, extends the provisions of RCW 46.20.308 to cover a test of urine. RCW 46.61.506 establishes certain general presumptions arising from the proportion of alcohol in a person's blood. Subsection (2) of RCW 46.61.506 provides in part:

> Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of his *blood, breath or other bodily substance* shall give rise to the following presumptions:

(Italics ours.) Section 11-902(b) of the Uniform Vehicle Code (1968 version) provides in part:

> Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's *blood, urine, breath, or other bodily substance* shall give rise to the following presumptions:

(Italics ours.)

The drafters of Washington's statute again chose to delete the word "urine." Rather than being an indication that the deletion of "urine" from RCW 46.20.308 was inadvertent, the deletion in RCW 46.61.506 indicates a consistent pattern of adaptation. Further, though a urinalysis is probably covered under the "other bodily substance" provision of RCW 46.61.506, the presumption statute is by its terms a

general statute applying to "any civil or criminal action." The creation of general presumptions arising in "any civil or criminal action" does not indicate an intention to amend the provisions of a specific statute dealing with the rights of law enforcement officials to obtain specific types of evidence. A conflict between a general statute and a specific statute will be resolved in favor of the specific provision. *Knowles v. Holly, supra* at 702. The trial court did not err in ruling that the provisions of RCW 46.20.308 do not apply to an unconsented taking of a urine sample. Rochelle does not argue that the urine sample in this case was performed in an unreasonable manner in violation of general constitutional safeguards.[2] The court did not err in refusing to suppress the urinalysis.

Rochelle also contends that the urinalysis was admitted in violation of his patient-physician privilege. As noted above, Rochelle's physician authorized the State to take a urine sample for the purpose of a urinalysis. Rochelle contends, and we agree, that a urinalysis performed pursuant to a physician's direction is a privileged communication between physician and patient. *Hansen v. Sandvik,* 128 Wash. 60, 222 P. 205 (1924). But it is equally clear that the privilege may be waived by the patient.

The question of the admissibility of the State's evidence concerning the urinalysis became very confused because of Rochelle's need to call his physician as a defense witness

---

[2]*Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966) at pages 771-72 concluded:

> **Finally, the record** shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain.

Presumably, the taking of a urine sample in an unreasonable manner could also raise constitutional issues.

before the State had rested. The physician testified that in his opinion, Rochelle was not under the influence of alcohol or narcotic drugs when brought to the hospital. The record does show, however, that the trial judge made it clear that he would construe the physician's testimony as a waiver of the privilege by Rochelle if the testimony was offered in defense after the State had rested. The trial judge stated that although he had sustained Rochelle's objection because (1) "[t]he breathalyzer statute did not give authority to take the urinalysis test," (2) "the evidence does not support that [the] urinalysis was made knowingly, understandably, on the part of the defendant," and (3) "it would constitute a violation of the defendant's doctor-patient privilege," his ruling was "without prejudice to the State in its rebuttal."

After the State rested, Rochelle did offer the physician's testimony as a part of his case in defense. By introducing the opinion testimony of his physician, Rochelle "abandoned his right of medical privacy and waived the statutory physician-patient privilege as to any medical testimony which tends to contradict or impeach his medical evidence." *State v. Tradewell*, 9 Wn. App. 821, 824, 515 P.2d 172 (1973). *See also State v. Gregory*, 79 Wn.2d 637, 643, 488 P.2d 757 (1971). The court did not err.

■ Rochelle's final argument is that the State's evidence does not support the trial judge's findings of fact. Our limited function in response to this challenge on appeal is to review the record to determine if the findings are supported by substantial evidence. *State v. Bell*, 59 Wn.2d 338, 368 P.2d 177 (1962). We find that they are.

Affirmed.

SWANSON, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied November 18, 1974.

Review denied by Supreme Court January 22, 1975.