[No. 43403.    En Banc.    December 26, 1974.]

ELIZABETH N. ORIANS et al., *Petitioners*, v. HUGH L. JAMES
et al., *Respondents*.

*John M. Darrah,* for petitioners.

*Slade Gorton, Attorney General,* and *Wayne L. Williams,
Assistant,* for respondents.

BRACHTENBACH, J.—Petitioners each attempted to file a
declaration of candidacy for precinct committeeman. Their
filings were refused by the King County Director of Elec-
tions because of their failure to sign the loyalty oath re-
quired by RCW 29.18.030. The statutory oath contains three
separate clauses, discussed hereafter. We agree with peti-
tioners that the oath is unconstitutional as to two of the
three clauses and grant appropriate relief.

There are two issues involved. First, does the oath violate
the First Amendment as most recently interpreted by the

United States Supreme Court in *Communist Party v. Whitcomb*, 414 U.S. 441, 38 L. Ed. 2d 635, 94 S. Ct. 656 (1974)? Second, does our "authoritative interpretation" in *Hughes v. Kramer*, 82 Wn.2d 537, 511 P.2d 1344 (1973), which circumscribes the statute to constitutionally permissible narrowness, save it from being void?

■■ We make two preliminary but fundamental and controlling observations. First, the wisdom, desirability and evaluation of the efficacy of constitutionally valid loyalty oaths are considerations solely within the province of the legislature. Second, since we are dealing with First Amendment rights, we are bound by the holdings of the United States Supreme Court.

Like most controversial topics, loyalty oaths have engendered much litigation. *See* 77 Yale L.J. 739 (1968). We need not extend this opinion by a lengthy review of prior cases because the United States Supreme Court has ruled definitively on the matter. In *Communist Party v. Whitcomb, supra,* quoting from *Brandenburg v. Ohio*, 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969), the court said at page 448:

> "[L]ater decisions have fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. As we said in *Noto v. United States*, 367 U. S. 290, 297-298 (1961), 'the mere abstract teaching . . . of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.' . . . A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments. It sweeps within its condemnation speech which our Constitution has immunized from governmental control.

Turning to our statute, it reads as follows:

### Affidavit

FURTHER, I do solemnly swear (or affirm) that I will support the Constitution and laws of the United States and the Constitution and laws of the state of Washington; that I do not advocate the overthrow, destruction, or alteration of the constitutional form of government of the United States or of the state of Washington or any political subdivision of either of them, by revolution, force or . violence, and that I do not knowingly belong to any organization, foreign or otherwise, which engages in or advocates, the overthrow, destruction or alteration of the constitutional form of government of the United States or of the state of Washington or any political subdivision of either of them, by revolution, force or violence.

RCW 29.18.030.

The oath contains three distinct elements. First is the affirmation of supporting the constitution and laws of the United States and the State of Washington. Second is the denial of advocacy of the overthrow, destruction or alteration of the constitutional form of government by revolution, force or violence. Third is the denial of knowing membership in any organization which engages in or advocates such overthrow, destruction or alteration. One petitioner agreed to sign an oath containing the first clause only; the other refused to sign any oath.

The Indiana statute which the court voided in the *Whitcomb* case was substantially the same as clauses two and three of our statute. It required an affidavit by the officers of a political party that

> it does not advocate the overthrow of local, state or national government by force or violence, and that it is not affiliated with and does not cooperate with nor has any relation with any foreign government, or any political party, organization or group of individuals of any foreign government.

*Communist Party v. Whitcomb, supra* at 443 n.1.

■■ Our statute is broadly stated and extracts an oath denying mere advocacy or knowing membership in an organization engaging in such mere advocacy. These are the very standards which the *Whitcomb* decision struck down.

To be constitutional, the oath statute must be narrowly drawn so as to be limited to advocacy directed to inciting or producing imminent lawless action which is likely to incite or produce such action. Our statute is not so drawn.

The State argues that the United States Supreme Court will sustain a loyalty oath which is impermissibly broad in language if the highest state court has limited its application by a so-called authoritative interpretation. In other words, even though the statute is unconstitutionally broad —on its face and literally read—a state court decision narrowing the law to meet the constitutional perimeters will suffice. *Law Students Civil Rights Research Council Inc. v. Wadmond*, 401 U.S. 154, 27 L. Ed. 2d 749, 91 S. Ct. 720 (1971).

We acknowledge that we have indulged in that fiction. We have said in the obscenity field that an overly broad statute may be saved by our authoritative interpretation. *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973).

Here we exercise our discretion and decline the opportunity to apply that theory to rescue the loyalty oath.

We believe that the United States Supreme Court would accept and respect our authoritative interpretation of this statute if we were to circumscribe it by judicial construction. Indeed, it is persuasively arguable that *Hughes v. Kramer*, 82 Wn.2d 537, 511 P.2d 1344 (1973), has already done just that.

However, we believe that candidates for public office should not be required to sign an oath which is unconstitutional on its face and in its literal meaning. To say that the law does not mean what it plainly states because it has been judicially interpreted to mean something else may be judicially recognized but it is in fact illogical. We must remember that we are dealing with the very essence of the democratic process—free speech and candidacy for public office. Candidates should be able to sign an oath which means what it says and which is constitutional when read literally, on its face and in application.

The relief sought is granted as to clauses two and three of the statutory oath, and each petitioner is entitled to file a declaration of candidacy with an oath containing only clause one of the statute.

FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.

HALE, C.J. concurs in the result.