[No. 45706. En Banc. August 2, 1979.]

AUTOMOBILE DRIVERS & DEMONSTRATORS UNION LOCAL NO. 882, ET AL, *Respondents,* v. THE DEPARTMENT OF RETIREMENT SYS-TEMS, *Appellant.*

416

*Slade Gorton, Attorney General,* and *Wayne L. Williams* and *Matt Coyle, Assistants,* for appellant.

*Herman L. Wacker* and *Vance, Davies, Roberts, Reid & Anderson,* for respondents.

HICKS, J.—This is a direct appeal from a King County Superior Court judgment pursuant to RAP 4.2(a)(2). The Department of Retirement Systems (Department) seeks review of a decision declaring RCW 41.26.030(3), which defines the term "law enforcement officer" to be unconstitutional insofar as it excludes Port of Seattle (Port) police officers from the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF). We reverse.

Respondent, Automobile Drivers & Demonstrators Union Local No. 882, is the collective bargaining representative for Port police officers. The jurisdiction of the Port police is coextensive with Port–owned property and includes Sea-Tac Airport and the Seattle waterfront. The Port police force presently numbers approximately 80 to 90 officers.

July 14, 1976, the union and its Port police members petitioned for admission of the Port police to the LEOFF retirement system established under RCW 41.26. March 1, 1977, the Department denied the petition. Respondents sought an administrative appeal pursuant to RCW 41.26-.210. A formal hearing was held on July 22, 1977, before the assistant director of the Department. The Department did not dispute that the duties of Port police officers were "identical" with deputy sheriffs and city and county police officers. The hearing officer concluded, however, that Port police officers were not "law enforcement officers" encompassed within the definition of RCW 41.26.030(3), thus not entitled to membership in LEOFF.

Pursuant to RCW 34.04.130 of the state administrative procedures act, proceedings were brought before the King County Superior Court. The Port police officers and their union claimed the administrative decision was erroneous as a matter of law. June 8, 1978, a hearing was held on cross motions for summary judgment. July 11, 1978, the court granted respondents' motion for summary judgment and denied the Department's motion. The Superior Court ordered the Department to admit the Port police officers into LEOFF, effective either January 1, 1972, or alternatively the first date thereafter for which they qualified.

We believe the issues to be resolved are: (1) Does the definition of "law enforcement officer" contained in RCW 41.26.030(3) encompass Port of Seattle police officers? and (2) If the definition contained in RCW 41.26.030(3) does not include respondents, does the failure to do so deny individual Port police officers equal protection of the law in violation of the fourteenth amendment to the United States Constitution and Const. art. 1, § 12?

I

The Department acknowledges that the issues are purely legal; there are no disputed facts. The first issue is one of statutory construction. Do respondent Port police officers meet the statutory definition of "law enforcement officer", thus entitling them to coverage under RCW 41.26? RCW 14.08.120(2) authorizes municipalities with airports to appoint airport guards or police. Effective in 1974, RCW 53.08.280 extended to properly trained port police officers full police powers to enforce all applicable federal, state and municipal statutes, ordinances, rules and regulations on Port–owned or operated properties.

The LEOFF system became effective in March 1970. The legislative purpose of the system is set forth in RCW 41.26-.020 as follows:

> The purpose of this chapter is to provide for an actuarial reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and fire fighters, and to beneficiaries of such employees, thereby enabling such employees to provide for themselves and their dependents in case of disability or death, and effecting a system of retirement from active duty.

The Port police department was created in 1972, subsequent to enactment of the LEOFF enabling act. Effective April 1975, the Port police department became a recognized law enforcement agency with full police powers.

 Pension legislation is to be liberally construed in favor of the beneficiaries. *Hanson v. Seattle,* 80 Wn.2d 242, 493 P.2d 775 (1972). The issue in this case, however, is whether respondents are intended beneficiaries under RCW 41.26. The statutory definition section, RCW 41.26.030, defines "employer"[1] and "law enforcement officer" for use in the chapter as follows:

> (2)(a) "Employer" . . . means *the legislative authority of any city, town,* county or district *or the elected officials of any municipal corporation that employs any law*

---

[1]Amendments to the statutory definition of "employer" do not affect the outcome of the instant case. Laws of 1977, 1st Ex. Sess., ch. 294, § 17.

*enforcement officer* and/or fire fighter, any authorized association of such municipalities, and, except for the purposes of RCW 41.26.150, any labor guild, association, or organization, which represents the fire fighters or law enforcement officers of at least seven cities of over 20,000 population and the membership of each local lodge or division of which is composed of at least sixty percent law enforcement officers or fire fighters as defined in this chapter.

. . .

(3) "Law enforcement officer" means *any person who is serving on a full time, fully compensated basis as a* county sheriff or deputy sheriff, including sheriffs or deputy sheriffs serving under a different title pursuant to a county charter, *city police officer,* or town marshal or deputy marshal, with the following qualifications:

. . .

(c) *Only such full time commissioned law enforcement personnel as have been appointed to offices,* positions, or ranks in the police department which have been specifically created or otherwise expressly provided for and designated *by city charter provision or by ordinance enacted by the legislative body of the city shall be considered city police officers . . .*

(Italics ours.)

Respondents argue that Port police are "city" police officers under RCW 41.26.030(3). They reach this conclusion by interpreting the words "city" and "municipal" as interchangeable. *See State ex rel. O'Connell v. Port of Seattle,* 65 Wn.2d 801, 803, 399 P.2d 623 (1965). Thus, they reason, the inclusion of city police in the definition of law enforcement officer in this statute encompasses municipal (*i.e.,* port district) police.

It is clear that the Port is a municipal corporation. The legislature has explicitly described port districts as "municipal corporations." RCW 53.04.060. *See also Port of Seattle v. International Longshoremen's & Warehousemen's Union,* 52 Wn.2d 317, 324 P.2d 1099 (1958). It is undisputed that Port fire fighters are included in LEOFF under the statutory definition of "fire fighters". The problem presented here, however, involves the definition of "law

enforcement officer" under RCW 41.26.030(3). The Department argues that the "plain wording" of RCW 41.26.030(3) excludes respondents from membership in LEOFF.

█ █ A basic rule of statutory construction is that when the language of a statute is clear and unambiguous, there is no room for judicial interpretation. *Roza Irrigation Dist. v. State,* 80 Wn.2d 633, 497 P.2d 166 (1972). Here, however, there is disagreement as to the meaning of the term "city" police officer in the context of the definition of "law enforcement officer" for the purpose of inclusion in the LEOFF system. To ascertain legislative intent, the statutory scheme as a whole should be examined. *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 532 P.2d 614 (1975).

Under the act, "fire fighter" is statutorily defined as any person "serving on a full time, fully compensated basis as a member of a fire department of an *employer*". (Italics ours.) RCW 41.26.030(4). "Employer" is defined as the "legislative authority of any *city,* town, county or district *or* the elected officials of any *municipal corporation*". (Italics ours.) RCW 41.26.030(2)(a). Thus, port fire fighters, as employees of a municipal corporation, are covered under LEOFF.

In contrast with the definition of "fire fighter", the statutory definition of "law enforcement officer" makes no reference to "employer." Instead, RCW 41.26.030(3) specifically defines law enforcement officer as county sheriff, deputy sheriff, city police officer, town marshal or deputy marshal. The Department invokes the rule that the clear expression of one thing in the statute, (*i.e.,* county sheriffs, city police officers, etc.) excludes those not expressed (port district police). *Dominick v. Christensen,* 87 Wn.2d 25, 548 P.2d 541 (1976). Respondents urge the court to read the words "port district" or "municipal corporation" into the definition of law enforcement officer.

We note that the LEOFF statutes were enacted prior to the statutory authorization of port police departments with full police powers. Nevertheless, the definition of law

enforcement officer has been subsequently amended without including "port police officers" or police employed by municipal corporations. The precise issue has been raised before the Department several times. In addition, a bill was introduced in the 1977 legislature to expressly include port police officers in LEOFF, but no action was taken. House Bill 490, House Journal, 45th Legislature (1977), at 141.

The definition of "employer" includes cities and municipal corporations. If the two terms are used synonymously under the act, there would be no reason to include both. The legislature is presumed not to have used superfluous words. *State v. Fenter*, 89 Wn.2d 57, 60, 569 P.2d 67 (1977). If the legislature intended to include police employed by municipal corporations, it could have defined "law enforcement officer" in the same manner as "fire fighter" by referring to "employer." It did not do so. This court cannot read into a statute that which it may believe the legislature has omitted, be it an intentional or inadvertent omission. *Jepson v. Department of Labor & Indus.*, 89 Wn.2d 394, 573 P.2d 10 (1977).

Finally, to be considered "city police officers" under the statute, respondents must also meet the qualifications set forth in RCW 41.26.030(3)(c), *i.e.*, appointed to offices provided for or designated by "city charter provision" or by "ordinance" enacted by the legislative body of a *city*. In the instant case, the Port police department was apparently created by resolution of the Port commission, the legislative authority of the Port district.

We conclude that the legislature has not included port police officers within the definition of "law enforcement officer" under LEOFF.

## II

Respondents argue that if the statute excludes them from LEOFF, they are denied equal protection under the fourteenth amendment to the United States Constitution and Const. art. 1, § 12.

■ At the outset, we note that a statute which does not affect fundamental rights or create a suspect classification will not be invalidated unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective. *Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978), citing *McGowan v. Maryland,* 366 U.S. 420, 425–26, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961). No fundamental right is at stake in this case. The rational relationship standard of equal protection analysis is the appropriate test to be applied. All persons need not be treated alike under that standard. It is sufficient if (1) the legislation applies alike to all persons within the designated class; and (2) reasonable grounds exist for distinguishing between those who fall within and those without the class. *Moran v. State,* 88 Wn.2d 867, 568 P.2d 758 (1977).

The legislature has broad discretion in creating classifications in social and economic legislation; a classification will be upheld if any state of facts may reasonably be conceived to substantiate it. *McGowan v. Maryland, supra.* The wisdom of a legislative classification is not subject to our review. And a statute is presumed to be constitutionally valid and the burden is on the challenger to prove that a classification does not rest on a reasonable basis. *State v. Devine,* 84 Wn.2d 467, 470, 527 P.2d 72 (1974).

With these precepts in mind, we consider the constitutional challenge made in this instance. Respondents place great reliance on the fact that fire fighters employed by the Port are included in LEOFF. They reason that since Port fire fighters are included in LEOFF and Port police officers are not, the pension system which includes the one (fire fighters) and excludes the other (police) is without reason and, consequently, arbitrary. An arbitrary selection for inclusion in the system cannot stand.

■ As set forth in RCW 41.26.020:

The purpose of this chapter is to provide for an actuarial reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and

fire fighters . . . and effecting a system of retirement from active duty.

Manifestly, the legislature may separately classify law enforcement officers and fire fighters. That the statutory objective is the same for both groups and is sought to be achieved by a single pension system does not militate against the classifications. From the standpoint of equal protection, what the legislature may do for fire fighters is of no concern to respondents. To prevail on their equal protection contention, Port police must demonstrate that their exclusion from the classification of law enforcement officer was arbitrary or furthered no purpose of the act.

Following a hearing before a Department hearing examiner, an administrative appeal to the Director of the Department of Retirement Systems was taken by the Port police officers. In the course of the written ruling, the Director stated: "The Department of Retirement Systems does not dispute the duties of the Port of Seattle police officers and the fact that they are identical with deputy sheriffs and city and county police officers performing these similar services." For purposes of review, this statement establishes identity of duties as a fact of this case.

■ The relevant inquiry then is whether reasonable grounds may be conceived for distinguishing between police officers who fall within the statutory definition of "law enforcement officer" and port police officers, performing functionally identical duties, who do not. One such ground may be the solvency and integrity of the LEOFF fund. When the state administers a finite fund, a statutory discrimination will not be set aside if any state of facts can reasonably be conceived to justify it. *Caughey v. Employment Security Dep't,* 81 Wn.2d 597, 599, 503 P.2d 460, 56 A.L.R.3d 513 (1972). At the time of the creation of the LEOFF system in 1970, there were no port police who had "identical" duties with other police officers. Port police were fully empowered as police officers by the legislature several years later. By that time, legislative experience with

the funding of LEOFF may well have prompted the legislature to exclude port police. The fact that port districts have authority to establish their own pension and retirement system (RCW 53.08.170), may have been considered by the legislature as making it unnecessary to include port police in LEOFF at the time of their full empowerment as police officers.

The jurisdiction of county and city law enforcement officers includes port properties within county or city boundaries. RCW 36.28.010 and .020. Port police jurisdiction is restricted to port properties. RCW 53.08.280. Thus, while their functional duties may be "identical" with city and county police officers, port police territorial area of responsibility is not "identical".

The Department points to a number of distinctions between Port police and city and county police. For example, city and county police are covered by civil service laws; Port police are not. Respondents contend that most of the distinctions claimed by the Department are ultimately based upon the status of port police as employees of port districts. Such distinctions, respondents argue, must fail because the legislature did not deem it relevant for purposes of including port fire fighters in LEOFF. As we have indicated above, we disagree with this contention. What the legislature chose to do about fire fighters at one point in time is not constitutionally controlling as to what it must do in the way of classification of port police officers several years later.

Respondents have failed to satisfy their heavy burden of proof that the classification is manifestly arbitrary, unreasonable, inequitable and unjust. *Childers v. Childers,* 89 Wn.2d 592, 604–05, 575 P.2d 201 (1978). We hold that RCW 41.26.030(3) does not violate respondents' equal protection rights.

Reversed.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, and WILLIAMS, JJ., concur.

WRIGHT, J. (concurring)—I concur with the majority. This action involves application and interpretation of a statute. RCW 41.26.030(3).

While it is true the legislature could have used the word "municipal" rather than the word "city", the legislature did not do so. The word "municipal" includes cities. The word "city", however, does not include all municipalities. The word "municipal" is broader than the word "city". *State ex rel. Griffiths v. Superior Court,* 177 Wash. 619, 621–22, 33 P.2d 94 (1934).

The language here is clear. If the language of a statute is clear and unambiguous there is no proper place for construction. *State v. Roth,* 78 Wn.2d 711, 714, 479 P.2d 55 (1971); *State ex rel. Hagan v. Chinook Hotel, Inc.,* 65 Wn.2d 573, 578–80, 399 P.2d 8 (1965); *State v. Spino,* 61 Wn.2d 246, 248–49, 377 P.2d 868 (1963); *State v. Houck,* 32 Wn.2d 681, 684, 203 P.2d 693 (1949); *Shelton Hotel Co. v. Bates,* 4 Wn.2d 498, 507, 104 P.2d 478 (1940).

It is not a judicial function to add words to a statute even if it appears the omission was a legislative oversight. *Jepson v. Department of Labor & Indus.,* 89 Wn.2d 394, 403, 573 P.2d 10 (1977); *State v. Rochelle,* 11 Wn. App. 887, 890, 527 P.2d 87 (1974); *Knowles v. Holly,* 82 Wn.2d 694, 703, 513 P.2d 18 (1973). The trial court erred because the remedy granted violates this principle of statutory construction. A court may not add to a statute, even if that addition seems necessary to make the statute constitutional. We said in *Orians v. James,* 84 Wn.2d 819, 529 P.2d 1063 (1974): "To say that the law does not mean what it plainly states because it has been judicially interpreted to mean something else . . . is in fact illogical." *Orians v. James, supra* at 822. That case dealt with *limiting* the application of a statute. How much more illogical is it to *extend* the operation of a statute?

I agree with the majority that the classification excluding Port police from the LEOFF retirement system is valid. I

have, however, added the foregoing to state that an additional reason the trial court must be reversed is because the remedy so selected is impermissible.

For the reasons stated by the majority and for the additional reason stated herein, I would reverse.

DOLLIVER, J. (dissenting)—I agree with the majority's position as to RCW 41.26.030(3); I do not agree with its views on equal protection or the application of this constitutional guaranty to the Port police.

The principle of equal protection does not require that things different in fact be treated in law as though they were the same. It does require, however, that those who are similarly situated be similarly treated. Tussman & tenBroek, *The Equal Protection of the Laws*, 37 Cal. L. Rev. 341 (1949); *Jenkins v. State,* 85 Wn.2d 883, 540 P.2d 1363 (1975). When a statute provides that one class is to receive different treatment from another, equal protection guaranties require that: (1) the legislation must apply alike to all persons within the designated class; and (2) reasonable grounds must exist for making a distinction between those who fall within the class and those who do not. *Belancsik v. Overlake Memorial Hosp.,* 80 Wn.2d 111, 492 P.2d 219 (1971); *Jenkins v. State, supra; Rinaldi v. Yeager,* 384 U.S. 305, 16 L. Ed. 2d 577, 86 S. Ct. 1497 (1966). The equal protection clause of the Fourteenth Amendment denies to states the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. *Reed v. Reed,* 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971); *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 64 L. Ed. 989, 40 S. Ct. 560 (1920).

I believe the exclusion of the Port police from the LEOFF system is irrational: persons similarly situated are being dissimilarly treated and the reasons given by the majority for excluding Port police from LEOFF are based on criteria wholly unrelated to the objectives of the LEOFF statute.

The majority relies on four grounds for asserting there is a rational exclusion of the Port police from LEOFF: (1) "the solvency and integrity of the LEOFF fund"; (2) the "port police territorial area of responsibility is not 'identical' [with city and county police officers]"; (3) "city and county police are covered by civil service laws; Port police are not"; and (4) "port districts have authority to establish their own pension and retirement system". Not one of these reasons stands up under careful scrutiny.

On the matter of the solvency and integrity of the LEOFF fund, the majority cites *Caughey v. Employment Security Dep't,* 81 Wn.2d 597, 599, 503 P.2d 460, 56 A.L.R.3d 513 (1972), and states: "When the state administers a finite fund, a statutory discrimination will not be set aside if any state of facts can reasonably be conceived to justify it." The majority neither argues nor demonstrates the inclusion of the Port police presents a danger to LEOFF. The *Caughey* court relied on *Dandridge v. Williams,* 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970). Except in the fantasies of children, all funds are, of course, finite—*i.e.,* "having definite or definable limits or boundaries". *Webster's Third New Int'l Dictionary* (1971). The sort of calculus urged by the majority would allow legislators to pick and choose classifications with impunity, secure in the knowledge that if any fund was involved they could point to it as being a "finite fund".

Yet an analysis of *Dandridge* and *Caughey* indicates the courts had considered factors other than the simple finitude of funds in holding equal protection inapplicable. Those factors distinguish *Dandridge* and *Caughey* from the case at hand. In neither *Dandridge* nor *Caughey* did the claimed recipients contribute directly to the "fund" from which payments were demanded. *Dandridge* involved public welfare moneys; the *Caughey* claim was for unemployment benefits. *See* RCW 50.24.010. Nor were the claimants required to subscribe to the public welfare or employment benefits systems. In contrast, fire fighters and law enforcement personnel must belong to LEOFF (RCW 41.26.040),

and each member is required to pay a certain sum into the pension system. RCW 41.26.080. *See also* RCW 41.26.085.

Finally, the holding in *Dandridge,* on which the *Caughey* court relied, is not based on the finite character of the fund. Rather, the Supreme Court said:

> We need not explore all the reasons that the State advances in justification of the regulation. It is enough that a solid foundation for the regulation can be found in the State's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor. By combining a limit on the recipient's grant with permission to retain money earned, without reduction in the amount of the grant, Maryland provides an incentive to seek gainful employment. And by keying the maximum family AFDC grants to the minimum wage a steadily employed head of a household receives, the State maintains some semblance of an equitable balance between families on welfare and those supported by an employed breadwinner.

(Footnote omitted.) *Dandridge,* at 486. The finite character of LEOFF is not an adequate bar to membership by persons similarly situated and does not overcome the requirements of equal protection.

The second ground is that the territorial responsibility of Port police is not identical with city and county police officers, yet the majority concedes the duties of the Seattle Port police are identical with the duties of city and county police. *See* RCW 53.08.280. The fact that county and city police may have overlapping jurisdictions with the Port as well as a wider jurisdiction on Port property is irrelevant. County sheriffs have similar overlapping jurisdictions with city police. It hardly can be contended seriously this distinction in and of itself would permit the legislature to bar city police from LEOFF. The classification must be rational. This classification is not.

Next, the majority claims that county and city police are under civil service and the Port police are not, and that this is a sufficient distinction. Without discussing whether the basic proposition is a reasonable classification, the fact is

that *not all* police officers who are covered by LEOFF are required to be under civil service. While most deputy sheriffs must be under civil service to qualify for LEOFF, there are a number of exceptions. *See* RCW 41.26.030(3)(b). In Class A and Class AA counties, the undersheriff, inspector, chief criminal deputy, chief civil deputy, and jail superintendent are exempt from civil service; in first–, second– and third–class counties three positions comparable to under-sheriff, chief criminal deputy and chief civil deputy are exempt from civil service; and in all other counties one position to be appointed by the sheriff is exempt. RCW 41.14.070. RCW 41.12.010, which provides for civil service for police of cities and towns, exempts "cities having a police force of not more than two persons including the chief of police". All of these officers—none of whom is covered by civil service—qualify under LEOFF. RCW 41.26-.030(3). The classification claimed by the majority to exclude Port police simply does not exist. To use this criterion to prevent Port police from being covered is wholly arbitrary.

Finally, the majority argues that, since port districts have authority to establish their own pension and retirement systems (RCW 53.08.170), this is a sufficient classification to meet the requirements of equal protection. It makes the observation that the legislature "may separately classify law enforcement officers and fire fighters" and then, without further analysis, states, "That the statutory objective is the same for both groups and is sought to be achieved by a single pension system does not militate against the classifications". The fundamental distinction the majority makes is not that there is a difference between a Port police officer and other law enforcement officers. In fact, it has been conceded that there is no difference between Port police and those law enforcement officers specifically authorized to be covered under RCW 41.26. Rather, the distinction is that one governmental employer, a port district, is not required to bring its employees under any state pension system coverage. RCW 41.40.410; 53.08.170. This argument might

have some force except that the fire fighters for the Port who as port employees are covered by the broad language of RCW 53.08.170 are, nevertheless, required to be members of LEOFF. Thus, the distinction as to the classifications of the employer is empty and the insistence of the majority that the treatment given fire fighters in LEOFF is of no concern to the Port police—or this court—is without force. The fact that the Port may set up its own retirement and pension system does not allow it to keep its fire fighters out of a pension system which has as its purpose:

> to provide for an actuarial reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and fire fighters, and to beneficiaries of such employees, thereby enabling such employees to provide for themselves and their dependents in case of disability or death, and effecting a system of retirement from active duty.

RCW 41.26.020.

Since this "classification" of the employer does not exclude one group of its law enforcement and fire fighting employees from LEOFF, it is not a rational classification to exclude another group. There is not one system for fire fighters and another for law enforcement officers. There is only one system—LEOFF.

> *A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920).*

(Italics mine.) *Jenkins v. State,* 85 Wn.2d 883, 888, 540 P.2d 1363 (1975).

The legislative scheme which deprives the Port police of the benefits of LEOFF is arbitrary and irrational and, therefore, is an unconstitutional legislative classification.

On this basis, I would affirm the trial court.