[No. 8364–3–I. Division One. July 20, 1981.]

RAY S. ELLIOTT, *Appellant*, v. BOARD OF TRUSTEES,
COMMUNITY COLLEGE DISTRICT NO. 9,
ET AL, *Respondents*.

*Watson, Gross & Feinstein, P.S.*, and *Ronald Farley*, for appellant.

*Kenneth O. Eikenberry, Attorney General*, and *Steven P. Recor, Assistant*, for respondents.

JAMES, C.J.—Ray S. Elliott appeals from a summary judgment granted in favor of defendants in an action

brought by Elliott for wrongful discharge. We affirm in part and reverse in part.

Elliott was employed by Community College District No. 9, Highline Community College (College), as a full–time welding instructor. He attained tenure in 1970 and reached the age of 65 on December 14, 1974. At that time the College and the State Board for Community College Education had a policy, adopted pursuant to RCW 28B.10.400, which required retirement of instructors at the end of the year in which they reached the age of 65. WAC 131–16–005, WAC 132I–128–820. The policy also allowed yearly extensions of service beyond the age of 65, but not to exceed the age of 70. WAC 131–16–005 has since been amended to require retirement at age 70 with yearly extensions allowed thereafter. Upon reaching 65 Elliott was granted two 1–year extensions of service for the 1975–76 and 1976–77 school years. Elliott also accepted a contract to teach during summer of 1977. On April 11, 1977, Elliott submitted his resignation to be effective at the end of summer 1977. Prior to submitting his resignation, Elliott informed college administrative personnel that he desired to continue teaching and would not leave the program until a replacement was found for him. Elliott performed under the summer quarter contract until late July 1977, when he suffered a heart attack. A replacement was hired on September 16, 1977; however, Elliott was listed on the College's fall quarter class list as a welding instructor. When the College refused to compensate Elliott for any sick leave during his convalescence, he commenced this action alleging wrongful discharge and requesting damages and declaratory relief. He alleged that he had been unconstitutionally compelled to resign in light of the College's retirement policy, and in any event he had entered into a contract to teach during the 1977–78 school year.

The trial judge granted the College's motion for summary judgment, concluding that the College's policy was constitutional, Elliott had voluntarily resigned and there was no contract of employment after the summer of 1977.

Elliott argues that the College's mandatory retirement policy violates equal protection and due process guaranties of the United States and Washington Constitutions. We do not agree.

 The test for determining whether mandatory retirement legislation violates equal protection is whether the classification which is based on chronological age is reasonably and rationally related to a legitimate state interest. *Vance v. Bradley,* 440 U.S. 93, 59 L. Ed. 2d 171, 99 S. Ct. 939 (1979); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 49 L. Ed. 2d 520, 96 S. Ct. 2562 (1976); *see generally* Annot., 81 A.L.R.3d 811 (1977). A legislative classification is presumed constitutional, and Elliott had the burden of proving that this policy had no reasonable basis. *Automobile Drivers Local 882 v. Department of Retirement Sys.,* 92 Wn.2d 415, 598 P.2d 379 (1979). As was stated in *Vance v. Bradley, supra* at 97:

> The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

(Footnote omitted.) To uphold legislation under the rational basis test, the court need only find that "the legislation [or administrative regulation] applies alike to all persons within the designated class" and that "reasonable grounds exist for distinguishing between those who fall within and those without the class." *Automobile Drivers Local 882 v. Department of Retirement Sys., supra* at 422.

Elliott does not contend that the retirement policy does not apply alike to all persons above the age of 65. He argues that there are no reasonable grounds for distinguishing between those above and those below the age of 65.

Most state and federal courts which have considered mandatory retirement for teachers and other educational employees have found it to be constitutional. *See e.g., Lamb v. Scripps College,* 627 F.2d 1015 (9th Cir. 1980); *Fulton County School Dist. v. Sanders,* 242 Ga. 298, 248 S.E.2d 670 (1978); *Palmer v. Ticcione,* 433 F. Supp. 653 (E.D.N.Y. 1977), *cert. denied,* 440 U.S. 945, 59 L. Ed. 2d 633, 99 S. Ct. 1421 (1979); *Klain v. Pennsylvania State Univ.,* 434 F. Supp. 571 (M.D. Pa. 1977); *Fazekas v. University of Houston,* 565 S.W.2d 299 (Tex. Civ. App. 1978). *See generally* Annot., 81 A.L.R.3d 811 (1977). We find these cases to be persuasive.

There are several valid reasons which support the mandatory retirement policy: permitting the College to plan for staffing needs by allowing it to anticipate the availability of employees in the work force, allowing for better employment opportunities among the staff, permitting the College to hire employees who possess knowledge of modern disciplines and skills, and avoiding the difficulties of determining, on a case–by–case basis, which employees should be required to retire. *See Lamb v. Scripps College, supra.* These reasons are rationally related to the mandatory retirement policy. Although Elliott has filed an affidavit contending that chronological age is not a valid indication of physical or mental capacity, he has attempted to controvert only one of the conceivable bases for a mandatory retirement policy. Elliott has not sustained his burden of proving that the College's retirement policy is unconstitutional.

Elliott also argues that the mandatory retirement policy violates due process because an irrebuttable presumption is created. We do not agree. Although increasing age may bring an increasing susceptibility to both physical and mental difficulties, it is apparent that younger persons may have similar difficulties and older persons may not. The classification may be in some degree both overinclusive and underinclusive; however, this imperfection does not result in a violation of due process or equal protection. *Vance v.*

*Bradley, supra.* The increasing possibility of infirmities associated with advancing age may have been a consideration in adopting a mandatory retirement policy; however, there is no presumption that persons are unfit to teach upon reaching the age of 65.

We also reject Elliott's contention that it was improper to uphold the College's retirement policy on summary judgment because there are material issues of fact. In arguing for summary judgment the College established a rational basis for the retirement policy. The College met its initial burden and Elliott's affidavit which only controverted one reason for the mandatory retirement policy was insufficient to create a material issue of fact. The trial judge did not err in deciding the issue on summary judgment.

Elliott also contends that there is a material issue of fact as to whether he entered into a contract with the College to teach during the 1977–78 school year, which would entitle him to relief even if the College's mandatory retirement policy is upheld.

The College relied upon Elliott's deposition in its motion for summary judgment to show that no contract existed. The deposition indicates the College merely thanked Elliott for his offer. The College sustained its burden of demonstrating that there was no evidence of acceptance, and thus the burden shifted to Elliott to prove the existence of a material issue of fact. Elliott relies upon his deposition and the College's answers to his interrogatories. In considering the record we find no evidence from which it can be inferred that the College accepted Elliott's offer for full–time employment. The trial judge did not err in ruling that no full–time contract existed.

The College's answers to Elliott's interrogatories indicated, however, that the College and Elliott may have entered into a contract to employ him in a part–time capacity during the fall quarter of the 1977–78 school year. The College stated that, "[a]lthough [Elliott] was aware of college *plans to employ [him] in a part–time capacity* in Fall Quarter 1977, [he] failed to appear on the first day of

classes." There appears to be a material issue of fact regarding the formation of a part–time contract. Material issues of fact are raised as to whether there was a part–time contract; if so, whether Elliott's alleged failure to appear was a breach, and what benefits, if any, Elliott was entitled to as a part–time employee.

Affirmed in part; reversed and remanded concerning the existence and terms of a part–time contract.

SWANSON and WILLIAMS, JJ., concur.